■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MITCHELL MANCINI, Appellant. [631 NYS2d 151] —Judgment of the Supreme Court, Bronx County (Frank Diaz, J.), rendered July 13, 1993, convicting defendant, after jury trial, of robbery in the first degree, and sentencing him, as a second violent felony offender, to an indeterminate term of imprisonment of from 6 to 12 years, unanimously affirmed. The case is remitted to the Supreme Court, Bronx County, for further proceedings pursuant to CPL 460.50 (5).

In a prior order (*People v Mancini*, 207 AD2d 730), this Court found that defendant's conviction was supported by legally sufficient evidence and by the weight of the evidence adduced at trial; that there was no basis for a missing witness charge as the witness was unavailable to the People; and that, in the absence of any objection to the court's curative instructions, defendant failed to preserve this issue for appellate review. However, based upon the disposition of the appeal brought by his accomplice in the robbery (*People v Pagano*, 207 AD2d 685), we held defendant's appeal in abeyance and remanded the matter to Supreme Court for a *Batson* hearing. Following a hearing conducted on January 13, 1995, Supreme Court ruled that the prosecution had provided race-neutral explanations for the exercise of peremptory challenges during the first round of jury selection. We now affirm that ruling.

Defendant argues that the reasons stated by the prosecutor for exercising peremptory challenges to exclude five of six available Caucasian panelists, while "facially non-discriminatory, are merely pretextual". The case involves the robbery of a 36-year-old African-American woman when the automobile in which she was travelling with her 10-year-old Goddaughter became disabled. The defendants, the two police officers who investigated the robbery and the Assistant District

Attorney who tried the matter are all Caucasian. Both police officers gave evidence at trial.

At the hearing, the Assistant District Attorney stated that the criterion he employed in selecting jurors was to seek older, married or divorced persons who would be able to reach a guilty verdict despite the lack of an out-of-court identification (because the line-up had been suppressed) and the absence of testimony by the victim's Goddaughter (who had been sent to England to spare her the trauma of a trial appearance). He therefore used peremptory challenges to exclude young, single panelists who, presumably childless, would fail to identify with the family's desire to protect the child. He also sought to empanel jurors who were less educated than the victim who would be disposed to respect her educational accomplishments (she holds a doctoral degree). Finally, he sought to exclude anyone who worked in a school environment because of a negative personal experience with a teacher.

The record reveals that the Assistant District Attorney was given only 15 or 20 minutes to question the panel during the first round of the voir dire. Consistent with his ideal juror profile, the prosecutor exercised peremptory challenges against three white panelists. An unmarried accounts payable supervisor was excluded because, the prosecutor testified, he regarded her as "very intelligent" and was disturbed both by her inability to recall anything about a prior trial on which she served as a juror and by a perception that she "bonded" with defense counsel. A young, single woman who worked as an assistant registrar at a school was excluded, as was a young, male elementary school teacher. The prosecutor stated that he finds teachers are too "liberal", ask too many questions, and want to hear from "everybody". He also revealed that he had broken off an engagement with a school teacher. Two white jurors were not challenged on the first round: a woman who worked for the Taxi and Limousine Commission, which the prosecutor characterized as a "law enforcement" agency, and a single woman employed as a clerical worker, who he thought would look up to the well-educated victim.

Of the two white male panelists peremptorily challenged on the second round, one stated he could not look the defendants in the eye and pronounce them guilty. The other alleged that the police had gone so far as to "fabricate evidence" against his son. This Court has previously determined that the explanations for these challenges are race neutral (*People v Pagano*, *supra*).

The prosecution has stated a race-neutral explanation for

striking the prospective jurors during the first round of the voir dire (*Batson v Kentucky*, 476 US 79, 96-97; *People v Simmons*, 79 NY2d 1013, 1015) employing a method based upon juror characteristics other than race (*Hernandez v New York*, 500 US 352, 360). The burden therefore reverts to the defense to demonstrate that the proffered reasons are pretextual (*e.g.*, *United States v Scott*, 26 F3d 1458, 1465 [8th Cir]). The reasons need not meet the criteria to support a challenge for cause (*Batson v Kentucky, supra*, at 97-98) and, while not insulated from appellate review (*e.g.*, *People v Benson*, 184 AD2d 517; *People v Manuel*, 182 AD2d 711, *lv denied* 80 NY2d 834), the resolution of the issue by the Trial Justice is entitled to deference by the reviewing court (*People v Hernandez*, 75 NY2d 350, 357, *affd* 500 US 352, *supra)* as the assessment turns on the credibility of the attorney exercising the challenge (*Hernandez v New York, supra*, at 364-365).

Defendant has not met this burden. Any overt bias in the voir dire process seems to have been directed at the teaching profession and, given the inexactness of the art of jury selection, an attorney is entitled to rely on personal experience with those employed in a particular capacity to screen potential jurors (*United States v Johnson*, 4 F3d 904, 913 [10th Cir (explanation that prosecutor's experience with teachers as jurors has not been favorable was facially race neutral)]). The prosecutor applied "a profile of the ideal juror tailored to this case" and that profile "was applied consistently across racial lines" (*People v Epps*, 176 AD2d 293, *lv denied* 78 NY2d 1127).

The unpublished decision and order of this Court entered herein on July 6, 1995, is hereby recalled and vacated. Concur—Rosenberger, J. P., Ellerin, Rubin, Ross and Williams, JJ.