■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TREVOR WINT, Appellant. [655 NYS2d 469] —Judgment, Supreme Court, Bronx County (Alexander Hunter, Jr., J.), rendered June 10, 1994, convicting defendant, after a jury trial, of attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second degree, and sentencing him, as a second felony offender, to concurrent terms of 10 to 20 years, 7 to 14 years, and 7 to 14 years, respectively, unanimously affirmed.

In a prior order (*People v Wint*, 225 AD2d 362), we found that the trial court's failure to strike certain uncharged crimes evidence, and the admission of partially redacted medical records, provided no basis for reversal of defendant's conviction. However, we held defendant's appeal in abeyance, and remanded the matter to Supreme Court for a *Batson* hearing to afford the People an opportunity to provide race-neutral explanations for their peremptory challenges. Following a hearing conducted on October 23, 1996, Supreme Court,

without elaboration, adhered to its prior decision summarily denying defendant's *Batson* objection. We now affirm.

After the prosecution exercised 8 of its first 9 peremptory challenges against African-American panelists, defense counsel raised an objection pursuant to *Batson v Kentucky* (476 US 79). The three-step process in a *Batson* inquiry is now a familiar one. First, the party raising the challenge must make a prima facie showing that the opposing party has exercised its peremptory challenges to exclude one or more members of a cognizable group, and that other facts or circumstances exist to raise an inference of discrimination (*People v Childress*, 81 NY2d 263, 266). Once the prima facie showing has been made, the burden shifts to the party making the challenges to come forward with race-neutral explanations for its peremptory strikes (*Batson v Kentucky, supra*; *People v Childress, supra*). In the third step, the court must determine whether the facially neutral reasons offered are being used as a pretext for discrimination (*Purkett v Elem*, 514 US 765; *People v Payne*, 88 NY2d 172, 181). The burden of proof at this last stage "rests unalterably on the party objecting to the peremptory strikes" (*People v Payne, supra*, at 181).

We resolved the first step of the inquiry in our previous order, and defendant concedes on appeal that the explanations provided by the prosecutor were, at a minimum, facially race-neutral. Thus, we now concern ourselves only with the third step of the inquiry. On remand, the trial court did not state on the record the basis of its rulings on each challenge (*People v Payne, supra*, at 183-184), requiring us to infer those bases. Nonetheless, as there is no longer any disagreement regarding the first two steps, we may infer from the ultimate denial of defendant's *Batson* objection, after a hearing, that the court determined that the prosecutor's explanations were *not pretextual*. It is that determination we now review.

Defendant argues that the prosecutor's explanations for challenging 5 of the prospective jurors were merely pretextual, but concedes that the reasons offered for 3 others were not. Of the 5 jurors still at issue, the explanations for 2 of them were clearly race-neutral, and not pretextual. The prosecutor challenged the juror Lightborne, an African-American, because of her "non-relation" with her son, and because she was a "soft spoken older woman" whom he had trouble hearing and comprehending during voir dire. While the prosecutor's former explanation lacked any logical bearing to the case, the latter reason was rational, and related to her role as a juror. This juror, apparently positioned to be the first selected, would

become the foreperson, a role presumably requiring even more forcefulness than the ordinary juror. The prosecutor's concern that she was ill-suited for the role of foreperson was both appropriate and race-neutral.

The prosecutor challenged a second panelist, Fielder, also African-American, because she had failed to report to the police that she was the victim of a robbery, and because she had some familiarity with the location of the crime. She had also indicated, in a manner which might cause her to "minimalize" this crime, that she had some awareness of drug dealing in the area. These are clearly acceptable race-neutral reasons for a peremptory challenge.

The prosecutor challenged two other prospective jurors due to the nature of their employment. He stated at the hearing that he challenged juror Rampus because she worked at a psychiatric center with the mentally ill, and because she was childless. Another juror Hanson, was challenged based on her employment as a social worker, and because her comments regarding her past jury experience purportedly suggested a leniency toward criminal defendants. The prosecutor explained that he thought these jurors' occupations would make them "sympathetic" to the defendant.

The Appellate Division, Second Department has held that a juror's employment may be a sufficient race-neutral ground to exclude such juror, but only where the concerns regarding the juror's employment are related to the circumstances of the case (see, People v Bennett, 206 AD2d 382, lv denied 85 NY2d 859; People v Payton, 204 AD2d 661, lv denied 84 NY2d 830; People v Williams, 199 AD2d 445, lv denied 83 NY2d 916; but see, People v Craig, 194 AD2d 687, lv denied 82 NY2d 716). The Third and Fourth Departments have also stated their agreement with this rule (see, People v Dabbs, 192 AD2d 932, lv denied 82 NY2d 707; People v Duncan, 177 AD2d 187, lv denied 79 NY2d 1048).

Other courts, however, have accepted the view that the nature of a juror's employment might render the juror unduly sympathetic to the defendant, thereby justifying the use of a peremptory challenge (see, United States v Alvarado, 951 F2d 22 [2d Cir 1991] [challenge based on juror's role as a social worker was race-neutral and nondiscriminatory]; United States v Ray, 41 F3d 1504 [unpublished disposition] [4th Cir 1994] [explanation that juror who was married to a social worker might be sympathetic to defendant was not pretextual]; United States v Wallace, 32 F3d 921 [5th Cir 1994] [challenge of three social workers not pretextual]; State v Terry, 928 SW2d 879

[Mo Ct App ED 1996] [challenge of juror married to social worker not pretextual]; *see also, People v Mancini*, 219 AD2d 456, *lv denied* 86 NY2d 844 [prosecutor's bias against teachers, based on personal experience, was race-neutral]; *United States v Risher*, 32 F3d 573 [unpublished disposition] [9th Cir 1994] [explanation that lay minister might be too sympathetic was not pretextual]; *United States v Wilson*, 867 F2d 486 [8th Cir 1989], *cert denied* 493 US 827 [no pretext in striking juvenile court social worker who had more contacts with defense attorneys than prosecutors]).

Defendant argues that the reasons for challenging these social service workers was pretextual, since at least three non-African-American prospective jurors with similar backgrounds were not challenged by the prosecutor. However, the People note that one of the unchallenged jurors was in fact African-American, another was a guidance counselor at a New York City public school (whose sympathy for a criminal defendant is hardly an inexorable conclusion) and a third juror was not herself employed in a social services capacity, whereas her husband and son were.

There were no obvious instances of non-African-American jurors, with comparable social services backgrounds, not challenged by the People in this case (*cf., People v Rodriguez*, 211 AD2d 275, 279, *appeal dismissed* 88 NY2d 917). The record demonstrates, at most, that these challenges were the product of the prosecutor's dubious, stereotypical assumption that all social service workers are unduly sympathetic to criminal defendants. Without commenting on the validity of this stereotype, we find that these employment-related challenges were rationally based, and did not give rise to an inference of discrimination. Thus, at the third step of the *Batson* inquiry, defendant failed to meet his burden of demonstrating that the reasons for challenging these two jurors were pretextual.

A fifth prospective juror, Moody, was challenged by the prosecutor because he was "dressed very peculiarly" and was an "outrageous looking individual." The prosecutor also stated that he was troubled by the fact that the juror seemed unconcerned by an incident during which his father's glasses were smashed, and by the juror's "strange comment," discounted by the prosecutor, that his brother should have received *more* jail time for a conviction. Defense counsel argued that this challenge was pretextual because this juror, a postal worker with four children, who was active in community organizations, and who had prior jury experience in a criminal case, had a conservative background.

The defendant has again failed to meet his burden of demonstrating pretext as to this juror. Counsels' descriptions of the prospective juror's appearance differ, but where the reasons offered by counsel for challenging a juror relate to the juror's appearance, the trial court obviously has a "distinct and perhaps insurmountable advantage" over an appellate court (*People v Richie*, 217 AD2d 84, 88, *lv denied* 88 NY2d 940). Further, the prospective juror's other comments relating to his family members provided acceptable race-neutral reasons for challenging him.

Additionally, the surrounding circumstances do not support an inference of purposeful discrimination by the prosecutor. The defendant and the complaining witness were both African-Americans, and defendant has failed to make even a minimal showing that the criteria used by the prosecutor in exercising its peremptory challenges were unevenly applied (*see, People v Mancini, supra*). Moreover, it bears reminding that the explanations offered need not rise to the level of sustaining a challenge for cause (*see, Batson v Kentucky*, 476 US 79, *supra*; *People v Allen*, 86 NY2d 101, 109), and a *Batson* challenge will not be successful merely because the explanations provided are weak or unpersuasive (*see, People v Payne, supra*). Rather, the party raising the *Batson* challenge *must* demonstrate that the explanations are being used as a pretext to discriminate, and a trial court's finding of no pretext is entitled to great deference on appeal (*see, People v Hernandez*, 75 NY2d 350, *affd* 500 US 352). Because we believe no demonstration of pretext was made here, we affirm. Concur—Wallach, J. P., Nardelli, Williams and Mazzarelli, JJ.