■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDMOND PENA, Also Known as EDMOND PINA, Appellant. [675 NYS2d 330] —Judgment, Supreme Court, New York County (Bruce Allen, J.), rendered July 7, 1994, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fifth degree, and sentencing him, as a second violent felony offender, to concurrent terms of 4¹/₂ to 9 years on the third-degree sale and possession convictions, and 2 to 4 years on the fifth-degree possession conviction, unanimously affirmed.

Defendant Edmond Pena was arrested on June 23, 1993 for the sale and possession of drugs in connection with a buy and bust operation. Defendant acted as the steerer while codefendant Ramon Gonzales sold three bags of cocaine to an undercover officer. Both men were arrested a few minutes after the sale, and 17 additional bags of cocaine and pre-recorded buy money were recovered from them. Defendant did not testify at trial, and the jury convicted him of the three crimes charged in the indictment.

Defendant challenges the trial court's denial of his motion to set aside the verdict. For the first time on appeal, defendant argues that the trial court failed to adhere to the procedures of CPL article 730 in rendering its retrospective determination that he was competent at the time of his trial. The issue of defendant's competency arose on December 2, 1993, after he made a suicide threat to a correction officer on the date he was scheduled to be sentenced. The sentencing was adjourned, and defendant was taken to Bellevue Hospital, where his history of treatment for schizophrenia was disclosed. He was treated with several medications, and was transferred to the psychiatric clinic at Rikers Island.

On January 4, 1994, defense counsel moved to set aside the verdict pursuant to CPL 330.30 and 440.10 (1) (e) on the ground that new evidence had been discovered that defendant had been mentally incompetent to stand trial, and that his conviction was therefore obtained in violation of his constitutional rights. Alternatively, he requested a hearing to deter-

mine his competency to stand trial pursuant to CPL 330.40 (2) (f), and *Pate v Robinson* (383 US 375). Relying on a 1991 letter stating that defendant had been admitted to a New Jersey hospital for "schizophrenia, undifferentiated", defense counsel claimed he would have interposed an insanity defense at trial had he known of defendant's condition. On January 20, 1994, the trial court ordered an examination pursuant to CPL article 730 to determine defendant's competency to be sentenced.

On February 2, and March 2, 1994, defendant was examined by Dr. Gordon at the Supreme Court Forensic Psychiatry Clinic to determine his fitness to be sentenced. In his March 2nd report, Dr. Gordon stated that although defendant related to his case in a "confused" state, and reported hearing voices and having suicidal urges, it appeared that such symptoms may have been contrived. Defendant was referred to Bellevue for further examination.

At Bellevue, defendant was examined by two psychiatrists, Dr. Saunders and Dr. Jonas, between March 3rd and March 9th. In their separate reports, the doctors stated their opinion that the defendant understood the charges against him and the nature of the legal proceedings. The doctors agreed that although defendant had a history of drug abuse and had some genuine psychotic symptoms, defendant responded well to anti-psychotic medication and appeared coherent and rational. They concluded that defendant was competent to proceed and able to assist in his own defense.

On March 15, 1994, the court received a letter from Dr. Goldstein, defendant's psychiatrist, who had examined defendant on January 31, 1994. After reviewing defendant's psychological history and his prior abuse of drugs and alcohol, Dr. Goldstein related that defendant had been taking anti-psychotic medication, had attempted suicide three times, had trouble sleeping due to nightmares of being chased and had heard voices screaming at him. Dr. Goldstein concluded that defendant was suffering from chronic undifferentiated schizophrenia, and that there was a substantial probability that defendant was unfit to proceed prior to and during his trial. The trial prosecutor, in his April 12, 1994 response to defendant's motion to set aside the verdict, disputed Dr. Goldstein's findings as inconsistent with the conclusions of the other examining doctors, and with defendant's unexceptional behavior during the trial proceedings.

On May 3, 1994, the date defendant's motion was scheduled to be decided, defense counsel requested an adjournment of the decision so that Hillel Bodek (Bodek), a clinical social worker

specializing in forensic clinical social work, could perform a more complete evaluation of defendant's condition. The court agreed and appointed Bodek to evaluate defendant's competency to stand trial at "the request of defendant." Thereafter, Bodek examined defendant on numerous occasions, totalling 28 hours, between May 5 and July 7, 1994. Bodek reviewed defendant's Bellevue records, Dr. Goldstein's report, the previous CPL article 730 evaluations by Doctors Gordon, Saunders and Jonas, defendant's school records, a mental health evaluation taken during defendant's adolescence and other evaluations taken during adulthood, including those obtained by prison health officials.

In his lengthy written report dated July 7, 1994, Bodek gave his opinion that defendant had the substantial capacity to know and appreciate the charges and proceedings against him, that he had a rational and factual understanding of those charges and proceedings and that he was capable of assisting in his own defense. Bodek stated that while defendant had experienced intermittent periods of severe psychosis, most likely due to his drug abuse, he had been able to function normally for long periods of time without medication, and no evidence existed that he experienced any psychosis or otherwise lacked competence before or during the trial. On the contrary, defendant began to experience auditory hallucinations and suicidal ideation only as his sentencing date approached. Bodek further reported that defendant expressed a clear understanding of the trial proceedings and the defense strategy. Bodek concluded that there was nothing to warrant interposing a defense of lack of criminal responsibility by reason of mental disease or defect in this case.

In a written decision dated July 8, 1994, the trial court denied defendant's motion to set aside the verdict. After noting that an incompetent person may not be tried for a criminal offense, the court stated that it would address the question of defendant's competency despite the fact that the defense never raised the issue before or during the trial, and defendant had exhibited no unusual behavior that would have obligated the court to *sua sponte* order a CPL article 730 examination. The court found that reconstruction of defendant's mental state at the time of trial was possible given the relatively brief interval between the verdict and defendant's motion, and the existence of contemporaneous evidence regarding defendant's mental state.

The trial court reviewed Bodek's report and the reports of the psychiatric evaluations of defendant. It also acknowledged

defendant's criminal history, his treatment for substance abuse and schizophrenia and his improved condition after taking anti-psychotic medication. The court found that during his pre-trial incarceration, defendant was seen by the Prison Health Services and denied having any recent psychiatric symptoms. Further, in the six months after the verdict, defendant was seen for medical care on a number of occasions and the records of those examinations are bereft of any signs of mental disorder. Additionally, the court noted that it had not observed defendant engage in any bizarre or inappropriate behavior during the trial.

The court stated the "most important" evidence of defendant's mental state was his recollection of the events of this case to Bodek. Defendant acknowledged to Bodek that he had been charged as acting as a steerer in a drug sale, but maintained that he had nothing to do with the sale but was merely present in the area. He further told Bodek that he had discussed the People's theory and the defense strategy with his lawyer. Defendant's trial counsel even adopted, apparently at defendant's suggestion, the argument that defendant could not have been the "boss" of the drug operation since he was a homeless person. The court also found that while defendant now claimed to be confused about the charges, his confusion was only about the strength and sufficiency of the People's case. This conclusion, the court found, was not undermined by defendant's suicide threat or Dr. Gordon's finding of psychotic symptoms, which may have resulted from defendant's admitted failure to take his medication, or the likelihood of a long prison sentence, or both.

Defendant now argues that the court violated the procedures of CPL article 730 by rendering a ruling on defendant's competence to stand trial based on an examination of only one qualified psychiatric examiner, Dr. Goldstein. Defendant argues that Bodek does not fall within the definition of a qualified "psychiatric examiner" under CPL 730.10 (7), and that the examinations by Doctors Gordon, Saunders and Jonas were for the different purpose of determining defendant's competency to be sentenced. However, we agree with the People that the procedures of CPL article 730 do not apply to retrospective competency determinations, and that the procedure utilized by the trial court did not violate defendant's rights. Accordingly, the motion to set aside the verdict was properly denied.

The United States Supreme Court has held that the conviction of an accused person while he is legally incompetent violates due process (*Cooper v Oklahoma*, 517 US 348; *Drope v*

*Missouri*, 420 US 162, 171-172; *Pate v Robinson*, 383 US 375, 378, *supra*). The test for determining competency is whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational and factual understanding of the proceedings against him (*Dusky v United States*, 362 US 402; *see also, Drope v Missouri*, 420 US 162, 172, *supra*; *People v Arnold*, 113 AD2d 101, *appeal after remand* 126 AD2d 955; *People v Lowe*, 109 AD2d 300, 304). To safeguard this right, the Supreme Court has recognized a corollary procedural due process right to a competency hearing whenever the facts or circumstances raise a bona fide doubt as to a defendant's competency (*Pate v Robinson*, *supra*; *People v Arnold*, *supra*; *People v Harris*, 109 AD2d 351, 354-355).

New York courts have also recognized a trial court's obligation to conduct a *sua sponte* inquiry into a defendant's mental capacity at any time before final judgment where reasonable grounds exist to believe the defendant is incompetent (*People v Armlin*, 37 NY2d 167, 171; *People v Smyth*, 3 NY2d 184, 187; *People v Colon*, 128 AD2d 422, 423, *appeal after remand* 200 AD2d 453, *lv denied* 83 NY2d 850). This duty is codified in CPL 730.30 (1), which requires a court to order an examination at any time after a defendant's arraignment "when it is of the opinion that the defendant may be an incapacitated person."

The Court of Appeals has held that once the procedures of CPL article 730 have been invoked by the court, those procedures must be strictly followed in order to ensure that the defendant receives a full and impartial determination of his mental capacity (*People v Armlin*, *supra,* at 172; *People v Lowe*, *supra,* at 304; *People v Weech*, 105 AD2d 1085, *appeal after remand* 116 AD2d 975). CPL 730.20 mandates that the allegedly incompetent defendant be examined by two "qualified psychiatric examiners," who must submit reports of their examination to the court (CPL 730.20 [1], [5]).

In the present case, the trial court ordered a CPL article 730 examination concerning defendant's fitness to be sentenced. Although defendant's motion to set aside the verdict alleged defendant's incompetency during trial, the trial court apparently believed that CPL article 730 applied prospectively only, to defendant's competency for sentencing. We agree. As the People note, the wording of many of the sections in article 730 are in the present tense, suggesting that the article is applicable only when the defendant "is" or "may be" an incapacitated person, and not when he may have been incompetent at some prior time (CPL 730.10 [2], [8]; 730.20 [1], [5]; 730.30 [1], [2],

[3]). We are unaware of any decision requiring strict adherence to the procedures in CPL article 730 in connection with a retrospective competency determination. This is understandable, since the very nature of a retrospective inquiry is to focus on any *contemporaneous* evidence of defendant's condition at the time of trial, rather than the results of a new mental examination (*see, People v Hudson*, 19 NY2d 137). Indeed, the Fourth Department has stated on several occasions that "it is impossible to have a posttrial article 730 proceeding" (*People v Weech*, 105 AD2d 1085, 1086, *supra; see also, People v Arnold, supra,* at 107).

Nonetheless, many courts have held that "it is possible to reconstruct the mental capacity of defendant at the time of trial through an adversary inquiry and thus preserve '[a]ll the safeguards of a concurrent determination'" (*People v Weech, supra,* at 1086, quoting *People v Hudson*, 19 NY2d, *supra,* at 140). "Such adversary hearing then becomes the functional equivalent of a pretrial article 730 proceeding" (*People v Weech, supra,* at 1086). Retrospective competency hearings are constitutionally permissible only where a meaningful inquiry into the defendant's competency may still be made (*People v Arnold, supra,* at 107; *cf., Pate v Robinson, supra; People v Peterson*, 40 NY2d 1014; *People v Lowe*, 109 AD2d 300, *supra*). Courts have considered three factors in determining whether reconstruction is possible: (1) the occurrence of contemporaneous psychiatric examinations; (2) the length of time since the trial; and (3) the opportunity to observe defendant's behavior at trial (*People v Lowe, supra,* at 307; *see also, People v Arnold, supra*).

The trial court properly determined that defendant's competency was capable of retrospective determination (*see, People v Hudson*, 19 NY2d 137, 139-140, *supra*). Four separate psychiatric evaluations were undertaken of defendant during the seven-month period between the jury's guilty verdict and the court's denial of this motion. Additionally, the Bodek report, a detailed evaluation conducted for the very purpose of assessing defendant's competency to stand trial, provided more information for the court to consider. Significantly, Bodek's report indicates that both defendant's trial counsel and the trial prosecutor were interviewed regarding the issue of defendant's competency during the trial.

While defendant now complains that Bodek was unqualified, it was defendant's trial counsel who specifically requested that Bodek evaluate defendant. In any event, it is clear that a trial court may rely on any available sources in making a retrospec-

tive competency determination (*see, People v Weech, supra,* at 1086-1087 [fact that examining doctor was not "qualified psychiatrist" does not mean that his testimony may not be considered]). Moreover, the court indicated in its decision that it had considered each of the medical evaluations, not merely Bodek's, before arriving at its conclusion.

While defendant correctly notes that the CPL article 730 examinations were conducted after the trial was completed, for the purposes of sentencing, defendant did undergo a psychiatric evaluation conducted by Prison Health Services in June 1993, shortly after he was arrested. The record of that evaluation reveals that defendant denied having any psychiatric symptoms, that he stated he was not depressed and that the examiner concluded that his impulse control was intact and good. Thus, there is contemporaneous evidence of defendant's condition both before and after the trial. This was sufficient to provide the court with a sound medical basis in rendering its competency determination (*see, People v Gonzalez,* 20 NY2d 289, *cert denied* 390 US 971; *People v Hudson, supra*; *People v Arnold, supra*; *see also, People v Savona,* 176 AD2d 362, *lv denied* 79 NY2d 864). That there were no psychiatric evaluations conducted during the pendency of the trial merely reflects the total absence of any indications that defendant was mentally incompetent during that period.

Nor was the lapse of time between the jury's verdict and the court's decision, approximately nine months, so great as to render the retrospective determination unreliable (*see, People v Allen,* 224 AD2d 1027, *lv denied* 89 NY2d 1087 [less than two years from defendant's plea]; *People v Arnold, supra,* at 107 [three years]). Indeed, the retrospective competency determination in this case stands on much better footing than those discussed in the earlier cases (*see, e.g., People v Gonzalez, supra*; *People v Hudson, supra*), because here the retrospective evaluation was conducted shortly after the guilty verdict. The prior cases involve a different situation where a competency hearing is directed for the first time on direct appeal, which is often several years after the verdict.

The court also had ample opportunity to observe defendant during the suppression hearings and trial of this matter. The Trial Judge found that defendant behaved normally during the trial, spoke to his attorney occasionally and requested permission to speak to a relative during a break in the proceedings. The trial prosecutor confirmed these facts, and even defense counsel conceded that nothing in defendant's behavior gave him reason to question his competence. While the failure to

raise the issue of the defendant's competence during the trial may not be considered a waiver (*see, Pate v Robinson*, 383 US, *supra,* at 384; *People v Armlin*, 37 NY2d, *supra,* at 172), such failure was appropriately considered by the court in determining whether defendant was competent at the time of trial (*see, Pate v Robinson, supra* at 386; *People v Harris*, 109 AD2d, *supra,* at 359).

In sum, we are satisfied that the issue of defendant's competency at trial received a full and impartial consideration from the trial court (*see, People v Armlin, supra,* at 172), whose "plenary inquiry" was sufficient to preserve "[a]ll the safeguards of a concurrent determination" (*People v Hudson, supra* at 140). Due process does not require a full evidentiary hearing in all competency determinations (*see, People v Gensler*, 72 NY2d 239, 246, *cert denied* 488 US 932; *United States v Nichols*, 56 F3d 403, 414 [2d Cir 1995]), especially where the court has previously invoked the procedures in CPL article 730, as was the case here. Moreover, the record indicates that both parties consented to having the court render its determination based on the medical reports and affidavits of both sides, rather than a testimonial hearing.

Defendant also argues that the trial court improperly denied his *Batson* objection (*see, Batson v Kentucky*, 476 US 79), wherein he alleged that the trial prosecutor had exercised his peremptory challenges in discriminatory manner against "Blacks and Hispanics." The court directed the prosecutor to place his reasons on the record for his peremptory challenges regarding four African-American jurors and one Hispanic juror. On appeal, defendant pursues his *Batson* claim as to only two of these jurors.

The prosecutor stated that he challenged the first of these jurors, an African-American woman, because she repeatedly referred to the defendant as "a person" in response to defense counsel's inquiry as to whether the juror would promise not to hold defendant's appearance against him. The prosecutor explained that the juror's gratuitous responses indicated that the juror had an innate sympathy for defendant and his plight. As to the second juror, also an African-American woman, the prosecutor asserted that this juror's interaction with him was very negative, which he believed demonstrated hostility toward himself and the prosecution.

Defense counsel responded that these explanations were merely a pretext for race-based challenges. The trial court rejected the *Batson* claim as to both jurors. It found that the prosecutor's reasons were acceptable, and ruled that no reme-

dial action was required. Although the court stated it did not detect the hostility from the second juror, it acknowledged "a certain reluctance about the way she answered questions."

We disagree with defendant's contention that the court committed reversible error in failing to make a pretext ruling at the third step of the *Batson* inquiry (*see generally*, *People v Payne*, 88 NY2d 172). The court required the prosecutor to disclose the reasons for his challenges, which were indisputably race-neutral; it listened to defense counsel's arguments as to why these reasons were merely pretext for discrimination; and it then denied the *Batson* challenge. Under these circumstances, the court's ruling must be understood as a determination that the reasons were not pretextual (*People v Wint*, 237 AD2d 195, *lv denied* 89 NY2d 1103). The court's additional statements regarding the untimeliness of the *Batson* claim as to the first juror who was already dismissed, and the absence of a pattern of discrimination, do not vitiate the finding of no pretext.

As to the merits of the *Batson* claim, we find no error in the court's rulings. At the third step of the *Batson* inquiry, the burden of persuasion on the issue of purposeful discrimination rests "unalterably" on the party objecting to the peremptory strikes (*People v Payne, supra,* at 181; *People v Wint, supra*). The inquiry is a factual one (*People v Allen*, 86 NY2d 101, 110; *Hernandez v New York*, 500 US 352, *affg* 75 NY2d 350), and resolution of this question by the trial court is entitled to "great deference" on appeal (*Batson v Kentucky, supra,* at 98, n 21; *see also, People v Hernandez*, 75 NY2d 350, 356, *supra*; *People v Alston*, 222 AD2d 294, 295, *affd* 88 NY2d 519; *People v Mancini*, 219 AD2d 456, 458, *lv denied* 86 NY2d 844). Judicial deference is especially appropriate where, as here, the assessment turns on the credibility of the attorney exercising the challenge (*Hernandez v New York, supra,* at 364-365; *People v Mancini, supra,* at 458).

We agree with the trial court that defendant has not met his burden of proving intentional discrimination (*see, People v Wint, supra; People v Mancini, supra*). The first juror's repeated references to the defendant as a person, in response to a simple question about the defendant's appearance, were sufficient to raise a legitimate concern of undue sympathy. The second juror's reluctance to answer the prosecutor's questions, while open to interpretation, was in fact acknowledged by the court. Thus, the reasons given by the prosecutor were either grounded in the record or verified by the court. As the Trial Judge was in the best position to assess the credibility of the prosecutor and

his explanations, we accord his determinations great deference and affirm the findings of no pretext.

We perceive no abuse of discretion in the court's *Sandoval* ruling (*see, People v Sandoval*, 34 NY2d 371). The court's ruling permitted inquiry into only two of the defendant's four prior convictions, including one for drug possession. Contrary to defendant's argument, permitting cross-examination regarding defendant's drug possession conviction was proper since it showed his willingness to place his interests above those of society (*see, People v Lewis*, 196 AD2d 742, *lv denied* 82 NY2d 898).

Defendant's various challenges to the prosecutor's summation are unpreserved for appellate review, as he failed to object to any of the comments of which he now complains (*see*, CPL 470.05 [2]; *People v Balls*, 69 NY2d 641) and we decline to review them in the interest of justice. Concur—Rosenberger, J. P., Nardelli, Wallach and Mazzarelli, JJ.