■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILFREDO DE LOS ANGELES, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR MERCEDES, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAFAEL PEREZ, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LINWOOD COLLINS, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANIEL GONZALEZ, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RUSSELL HARRIS, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE LLACA, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STANLEY TUKES, Appellant. [707 NYS2d 16] —Judgments, Supreme Court, New York County (Ira Globerman, J., at defendant Tukes's suppression hearing; Leslie Crocker Snyder, J., at jury trial and sentence), rendered June 27, 1995, convicting defendant Wilfredo De Los Angeles of four counts of murder in the second degree, one count each of conspiracy in the first degree, attempted murder in the second degree and assault in the second degree, five counts of criminal possession of a weapon in the second degree and one count of criminal possession of a weapon in the third degree, and sentencing him to an aggregate term of from 133⅓ years to life imprisonment; convicting defendant Victor Mercedes of two counts of murder in the second degree, one count each of conspiracy in the second degree, attempted murder in the second degree and assault in the second degree, and three counts of criminal possession of a weapon in the second degree, and sentencing him to an aggregate term of from 66⅔ years to life imprisonment; convicting defendant Rafael Perez of murder in the second degree, conspiracy in the first degree and criminal possession of a weapon in the second degree, and sentencing him to an aggregate term of from 50 years to life imprisonment; convicting defendant Daniel Gonzalez of four counts of murder in the second degree, one count each of conspiracy in the first degree, attempted murder in the second degree, assault in the second degree and criminal sale of a controlled substance in the third degree, and five counts of criminal possession of a weapon in the second degree, and sentencing him to an aggregate term of from 141⅔ years to life imprisonment; convicting defendant Russell Harris of four counts of murder in the second degree, one count each of conspiracy in the first degree, attempted murder in the second degree, assault in the second degree, criminal sale of a con-

trolled substance in the second degree, criminal possession of a controlled substance in the third degree and five counts of criminal possession of a weapon in the second degree, and sentencing him to an aggregate term of from 48⅓ years to life imprisonment; convicting defendant Jose Llaca of three counts of murder in the second degree, two counts each of attempted murder in the second degree and assault in the second degree, one count of conspiracy in the first degree and four counts of criminal possession of a weapon in the second degree, and sentencing him to an aggregate term of from 116⅓ years to life imprisonment; and convicting defendant Stanley Tukes of four counts of murder in the second degree, one count each of conspiracy in the first degree, attempted murder in the second degree and assault in the second degree, and five counts of criminal possession of a weapon in the second degree, and sentencing him to an aggregate term of from 133⅓ years to life imprisonment, unanimously affirmed. Judgment, same court and Justice, rendered June 27, 1995, convicting defendant Linwood Collins of conspiracy in the first degree and sentencing him to a term of from 20 years to life imprisonment, affirmed.

The verdict was based on legally sufficient evidence and was not against the weight of the evidence. We see no reason to disturb the jury's determinations concerning credibility. Contrary to defendant Perez's contention, the evidence of his actions and statements before, during, and after the murder of which he was convicted provided overwhelming proof that he acted in concert with the shooter to murder the victim (*see, People v Rossey*, 89 NY2d 970). Furthermore, there was no reasonable view of the evidence that he acted with intent to cause serious physical injury rather than death, and thus his request for the submission of manslaughter in the first degree was properly denied. There was ample evidence from which the jury could conclude that there was a single conspiracy that encompassed several drug-selling operations, rather than several conspiracies (*see, People v Leisner*, 73 NY2d 140, 149-151).

Defendant Tukes's suppression motion was properly denied. The record supports the hearing court's determination that his spontaneously volunteered statements to the police were not the result of any conduct by the police (*see, People v Gonzales*, 75 NY2d 938, *cert denied* 498 US 833).

The court properly exercised its discretion in denying defendants' motions for severance since most of the People's evidence was introduced to establish the joint enterprise, which evidence applied to all defendants (*see, People v Mahboubian*,

74 NY2d 174). The trial lasted eight months, with the People presenting some 70 witnesses, and to have conducted multiple trials would have violated the strong public policy favoring joinder and would have turned an already extended trial into several such trials, with security problems associated with disclosure of the identity of witnesses through repetitive appearances (*People v Mobley*, 162 AD2d 305, *lv denied* 76 NY2d 895). Furthermore, the record reveals that there was no irreconcilable conflict between the defenses presented nor was there a significant danger that any alleged conflict led the jury to infer any defendant's guilt. Incidents during the trial wherein some defendants elicited evidence that other defendants found objectionable did not require a severance, since no defendant took an aggressive adversarial stance against another, and since the evidence so elicited was cumulative to evidence elicited by the People or was nonprejudicial (*see, People v Cardwell*, 78 NY2d 996).

Defendants' applications pursuant to *Batson v Kentucky* (476 US 79) were properly denied. Defendants failed to preserve for appellate review their current contentions that the court did not follow the proper three-step procedure and that the prosecutor's explanations for his peremptory challenges of certain prospective jurors were pretextual, and we decline to review them in the interest of justice. Were we to review these claims, we would find that the record, read as a whole, establishes that the court followed the proper protocols and made a distinct finding that the reasons proffered by the prosecutor were not pretextual, and we would further find that this factual determination, which largely turned on the credibility of the prosecutor, was supported by the record (*see, People v Allen*, 86 NY2d 101; *People v Wint*, 237 AD2d 195, *lv denied* 89 NY2d 1103; *People v Mancini*, 219 AD2d 456, *lv denied* 86 NY2d 844).

Defendants' various contentions regarding the conduct of the trial court are unpreserved because defendants did not register an appropriate objection to the court's overall conduct during trial or request any corrective action (*People v Charleston*, 56 NY2d 886) and we decline to review them in the interest of justice. Were we to review these claims, we would find that the court took necessary steps, in this complex, multiple-defendant case, to clarify confusing testimony and to facilitate the orderly and expeditious progress of the trial (*People v Jamison*, 47 NY2d 882). Although at times, confrontations erupted between defense counsel and the court, the court's prompt curative instructions served to dispel any possible prejudice (*see, People*

*v Gonzalez*, 38 NY2d 208, 210). The jurors are presumed to have followed these instructions (*People v Davis*, 58 NY2d 1102), and the court's conduct could not have deprived any of the defendants of a fair trial in light of the overwhelming evidence of each defendant's guilt.

Defendants' various challenges to the admissibility of coconspirators' statements are unpreserved and we decline to review them in the interest of justice. Were we to review these claims, we would find that the statements were properly admitted (*see, People v Castillo*, 223 AD2d 481).

The court properly exercised its discretion in permitting the People to reopen their case during defendant Mercedes's summation, in order to introduce testimony about a pretrial photo identification of Mercedes, because his summation created an unfair impression about a witness's identification of him and the photo identification was thus rendered admissible for the first time in the trial. The prejudice to the People caused by this misimpression was of sufficient magnitude to warrant reopening the case during summation (*see, People v Olsen*, 34 NY2d 349; *People v Roseman*, 78 AD2d 878, *lv denied* 53 NY2d 711), and defense counsel was then allowed to cross-examine the witness and to resume his summation in order to comment upon the new testimony.

The challenged portions of the People's summation were largely responsive to defendants' summations (*see, People v Overlee*, 236 AD2d 133, *lv denied* 91 NY2d 976), and there was no pattern of inflammatory, prejudicial remarks warranting reversal (*see, People v D'Alessandro*, 184 AD2d 114, 118-119, *lv denied* 81 NY2d 884).

Viewed as a whole, the court's charge and supplemental instructions with respect to conspiracy in the first degree and multiple conspiracies conveyed the appropriate legal principles (*see, People v Fields*, 87 NY2d 821). Considering the form of the questions posed by the deliberating jurors, including their request for instruction on "deliberations," the balanced and noncoercive supplemental instructions provided by the court were meaningful (*see, People v Almodovar*, 62 NY2d 126; *People v Malloy*, 55 NY2d 296, *cert denied* 459 US 847). The court's response cautioning the jury against arbitrarily disbelieving a witness was proper, in context, since the court defined arbitrariness in terms of lack of reason.

Finally, defendant Collins argues that he was deprived of his right to a fair trial because of a prejudicial "stipulation" read to the jury. Collins contends that he did not "open the door" to the stipulation, which informed the jury that he was incarcer-

ated from February 1992 up until and including the time of trial, and that he never agreed to the "stipulation."

Although *People v Mullin* (41 NY2d 475, 480), relied upon by the dissent, speaks of prejudice to the defendant resulting from "the defendant's criminal past [being] forcefully and unrelentingly thrust upon the jury, admittedly without any conceivable justification," nothing similar occurred here. The jury never heard of any criminal history and the only mention of defendant's incarceration was one passing reference during a six month trial. In fact, the jurors proved fully capable of distinguishing defendant's lesser involvement by their inability to unanimously agree with respect to two of the three counts against him.

While Collins correctly notes that his trial lawyer did not enter into the stipulation, since counsel rejected the court's offer to inform the jury that he did not agree to the stipulation, this issue has not been preserved for appellate review (*see, People v Medina*, 53 NY2d 951). Thus, the sole issue is whether the trial court was correct in concluding that defense counsel had "opened the door" regarding defendant's incarceration.

After the direct testimony of each of two detectives which failed to place defendant at two key drug locations, the detectives were cross-examined by defense counsel. They were repeatedly asked whether they had *seen* defendant at the two crucial locations towards the end of the first detective's surveillance and during the entirety of the second detective's surveillance. Defense counsel was keenly aware that the detectives could not have seen defendant at the locations specified because the defendant resided elsewhere, at the New York City Correctional facility on Rikers Island. Since counsel's questions focused on the detectives' failure to observe defendant, these questions tended to mislead the jury. Furthermore, while the court initially urged the parties to agree upon a stipulation which would not mention defendant's jail status, the prosecutor was correct in urging that anything short of informing the jury that defendant was incarcerated would leave the impression that defendant had voluntarily withdrawn from the conspiracy.

Because of obvious prejudice, it is true that the prosecution is normally precluded from offering evidence about a defendant's criminal record in its direct case (*People v Mullin, supra*). Nevertheless, evidence otherwise inadmissible may become the proper subject of inquiry when the opposing party seeks to raise a subject on cross-examination in a way that would give it undue advantage (*see, People v Melendez*, 55 NY2d 445, 451).

Thus, prosecutors are permitted to clarify an issue during redirect where the defense has, during cross-examination, "opened the door" to otherwise inadmissible evidence (*People v Sherrod*, 240 AD2d 273, 274, *lv denied* 90 NY2d 1014; *People v Justiniano*, 203 AD2d 139, 140, *lv denied* 83 NY2d 968).

We perceive no abuse of sentencing discretion and have considered and rejected defendants' remaining claims. Concur—Williams, Ellerin, Wallach and Andrias, JJ.

Rosenberger, J. P., dissents as to *People v Linwood Collins*, in a memorandum as follows: "It is axiomatic that the prosecution is prohibited from introducing evidence of the past criminal record of a defendant where, as here, he has not taken the stand in his own behalf or put his character in issue (*People v Robbins*, 38 NY2d 913; *People v Richardson*, 222 NY 103, 109; 1 Wigmore, Evidence [3d ed], § 57). This Court has declared that '[i]nflexibly the law has set its face against the endeavor to fasten guilt upon [a defendant] by proof of character or experience predisposing to an act of crime * * * The endeavor has been often made, but always it has failed' (*People v Zackowitz*, 254 NY 192, 197)" (*People v Mullin*, 41 NY2d 475, 479).

I would reverse the defendant's conviction and remand the case for a new trial. The Trial Judge improperly admitted prejudicial evidence of Collins's criminal record.

At the consolidated trial of several defendants, who were alleged to have participated in a large-scale drug operation and to have committed homicides in furtherance of their criminal enterprise, prosecution witness Detective Benitez testified about his surveillance operations between 1992 and 1993 in the Bronx neighborhood where the defendants allegedly operated. Detective Benitez discussed seeing unspecified individuals acting as drug "pitchers," "lookouts," and "managers," but did not mention defendant Collins by name. The bulk of his testimony consisted of general statements about unnamed drug dealers' methods. For instance, the officer said that he "observed drugs being dropped from the roof to the persons on the bridge where they just drop the packets of crack down to the person who was selling it," and that "there would be one person collecting the money while the other person was cutting the strips of crack and handing it to the customers." However, nowhere did Benitez name Collins, either as someone who performed these criminal acts, or as someone who agreed with another person to cause those crimes to take place (*see*, Penal Law art 105 [elements of conspiracy]). For the most part, in those portions of the testimony, he did not specify any names.

Accordingly, on cross-examination, Collins's counsel elicited

from Benitez that the latter had not observed Collins partici-
pate in any of the transactions in question. The prosecutor
argued that defense counsel had thereby opened the door for
the People to introduce proof that Collins was incarcerated
during that time period. Otherwise, the prosecutor contended,
the jury might get the mistaken impression that Collins had
voluntarily withdrawn from the conspiracy in 1992. Defense
counsel opposed any mention of Collins's incarceration. The
parties conducted several sidebar discussions before the Trial
Judge, who initially agreed with defense counsel that it would
be unnecessarily prejudicial to mention the reason for Collins's
absence.

The Judge suggested, and defense counsel agreed to, a stipu-
lation simply saying that Collins was not in the area during
the time period about which Benitez testified. However, the
parties continued to struggle over the wording. It appears from
the record that the last sidebar conference on this issue ended
with the Judge directing the parties to think more about how
to phrase a stipulation.

Without any further resolution of this issue, and without the
consent of Collins's defense counsel, the prosecutor read a
number of statements identified as stipulations to the jury at
the end of the People's case. Among these was the "stipulation"
that "Linwood Collins has been incarcerated from February 19
of 1992 to the present time." Defense counsel objected and
moved for a mistrial. The Trial Judge admitted not remember-
ing whether they had ever resolved the stipulation issue, but
decided to let the purported stipulation stand because she felt
defense counsel's questions had been misleading and opened
the door. She offered to clarify that the prosecutor's statement
was not a stipulation, but defense counsel refused, reasoning
that unless the Judge instructed the jury to disregard the men-
tion of a criminal record, any further instructions would just
emphasize this improper evidence. Against this background,
and the specific and extended objection and motion made by
defense counsel, the majority is simply incorrect in finding the
issue unpreserved.

The motion for a mistrial as to Collins should have been
granted. It was error to permit the prosecutor to inform the
jury of a "stipulation" that was never made (*see, People v Kenda*,
3 AD2d 80, 86 [improper for court to place evidence before jury
in the form of stipulation absent defense counsel's consent]).

Disclosure of Collins's incarceration was prejudicial and un-
necessary. The finding by the court that Collins's attorney's
questions to Benitez were "misleading" and "opened the door"

was unwarranted. A question, if it were to be misleading, can only mislead the witness to whom it is put. The question cannot mislead the jurors. Nor can a truthful answer from a hostile witness be said to be misleading. Whatever can be said of the subject questions to and answers from Benitez, nothing in them "opened the door" to a "stipulation" or any other way of informing the jury of the defendant's prior incarceration.

Indeed, if anything should be called misleading, it is Benitez's vague direct testimony about his observations of unnamed drug dealers and their associates which defense counsel reasonably feared would create an impression of guilt by association unless he prodded the witness to be more specific about whether Collins had participated (*see, Kotteakos v United States*, 328 US 750, 774).

In a prosecution for conspiracy, the People must show, through each individual defendant's act, that he possessed the specific intent to participate in the alleged criminal enterprise (*see, People v Ozarowski*, 38 NY2d 481, 489). As the United States Supreme Court emphatically warned in *Kotteakos v United States* (*supra*, at 772-773): "Guilt with us remains individual and personal, even as respects conspiracies. It is not a matter of mass application. There are times when of necessity, because of the nature and scope of the particular federation, large numbers of persons taking part must be tried together or perhaps not at all, at any rate as respects some. When many conspire, they invite mass trial by their conduct. *Even so, the proceedings are exceptional to our tradition and call for use of every safeguard to individualize each defendant in his relation to the mass.*" (Emphasis supplied.) A defendant should be entitled to attempt to individualize the evidence in the case without being told he has opened the door to otherwise prejudicial and inadmissible information.

The majority accepts the prosecution's argument that the so-called stipulation was necessary to dispel the jury's possible speculation that Collins voluntarily withdrew from the conspiracy. Yet the motivation for Collins's non-participation in the post-1992 crimes was hardly material (particularly when offset against the potential for prejudice) because he was not raising the defense that he had renounced the conspiracy. Only then would it be relevant whether he was absent for reasons that truly mitigate culpability, rather than merely because participation was not practicable (*People v Taylor*, 80 NY2d 1). Furthermore, even if the jury had surmised that Collins voluntarily withdrew from the gang's activities after 1992, this would not affect the determination of his guilt if there was no indica-

tion that he made efforts to prevent his former co-conspirators from carrying out their criminal purpose, as is required for a successful renunciation defense (Penal Law § 40.10). In New York State, withdrawal from a conspiracy is not a defense. "Renunciation requires more than merely withdrawal from a conspiracy" (*People v Ozarowski*, *supra*, at 492). Thus, any such speculation by the jury would not have prejudiced the prosecution's case. The issue of withdrawal could quite simply have been handled by the court by charging the jury with the appropriate New York law.

In *People v Mullin* (41 NY2d 475, 479), the Court of Appeals held that "the prosecution is prohibited from introducing evidence of the past criminal record of a defendant where, as here, he has not taken the stand in his own behalf or put his character in issue." On several occasions, this Court has reversed convictions based on gratuitous references to defendants' criminal history (*see, e.g., People v Butler*, 258 AD2d 368 [jury tainted by overhearing during voir dire that venireman, a correction officer, recognized defendant]). In *People v Cuiman* (229 AD2d 280, 284, *lv denied* 90 NY2d 903), we held that the defendant's trial was "fatally compromised" when the police officer testified that the photo from which the victim identified the defendant was an arrest photo, because this testimony "created a strong inference that the defendant had a criminal record * * * and was irrelevant to any issue in the case other than the defendant's criminal propensity" (*supra*, at 285 [citation omitted]).

Where references to a defendant's criminal record could have been omitted without destroying the sense of the testimony, admission of such references is reversible error (*People v Adams*, 16 AD2d 1034, 1035). Here, *if* the prosecution had been entitled to counteract an inference that Collins had voluntarily withdrawn from the alleged drug conspiracy by 1992 (which it was not), it would have been sufficient to stipulate that Collins was out of the area for reasons beyond his control. The trial court, after having agreed that this was the proper solution, inexplicably forgot to make a final ruling on the question, and then let stand the prosecutor's comments after he took advantage of this judicial omission.

The majority contends that the evidence of defendant's imprisonment was "one passing reference during a six month trial" and, therefore, presumably inconsequential and non-prejudicial. The prosecutor made multiple mentions of Collins's imprisonment in his summation.

The very first note that the jury sent out during its delibera-

tion asked for the alleged stipulation. When the court asked: "Now, do we have an agreement on the stipulation of jail dates," counsel for Collins promptly responded that there was no such stipulation. He further reminded the court that he had argued at the time that "it was [not] appropriate for the matter to be put before the jury because I don't think I opened the door in the manner of questioning."

After more than 10 pages of further argument, the court stated, "I believe that the evidence came in as a stipulation by virtue of the record. I rest on the record." The record, of course, indicates that there was no stipulation. The court went on to state "it will be given to the jury as a stipulation and you have an exception, Mr. Dunn [Collins's attorney]."

The admission of the prejudicial evidence of Collins's prior imprisonment and, thus, of his criminal record and its denomination as a stipulation, warrants a new trial.