■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER WALKER, Also Known as DEMETRIUS ROBERTS, Appellant. [630 NYS2d 109] —Mikoll, J. P. Appeal from a judgment of the County Court of Columbia County (Leaman, J.), rendered March 7, 1994, upon a verdict convicting defendant of the crime of criminal sale of a controlled substance in the third degree.

Defendant was charged in a two-count indictment returned October 5, 1993 with the crimes of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree. The People produced evidence that on September 2, 1993, at approximately 3:00 or 3:30 P.M., members of the State Police Community Narcotics Enforcement Team were working with the City of Hudson Police Department in a joint effort to investigate narcotics trafficking in the City of Hudson, Columbia County. State Trooper Steven James, working undercover with a confidential police informant, was scheduled to visit an apartment in a high-rise building known as Bliss Towers, where James was to purchase crack cocaine. Prior to going to Bliss Towers, Hudson Police Chief Edward Eisley met with James and showed James two pictures of defendant (identified as People's exhibit No. 1), which were photographs of mug shots of defendant, obtained from New Jersey. Eisley told James to be aware that there was an ongoing investigation concerning defendant and a warrant for defendant's arrest, and James was warned that defendant might be present in the building. These facts were presented to the jury through the testimony of both Eisley and James during the trial.

James further testified that he and the informant entered apartment 412 in Bliss Towers and saw defendant asleep on a couch. There were others present and the informant introduced James to defendant as her buddy. James asked defendant for a bumpy (slang for crack cocaine) and, in response, defendant reached into the inside of his pants and produced a plastic baggy containing a white substance. James gave defendant $20 for the cocaine, and he and the informant then exited the apartment. James described the lighting in the apartment as safe for him to see to undertake the transaction. He testified that the entire transaction took only a few minutes, and that

he was face-to-face with defendant, while making the buy, for about 30 seconds. On their way down from the apartment in an elevator, James said that he attempted to inform his back-up unit and other police in the area, through a radio wire he was wearing, that the person from whom he made the purchase was the person he had seen in the photograph shown to him earlier by Eisley. Following the buy James drove to a meeting point and was shortly joined by Eisley. He asked Eisley if he had a better photo of defendant and was shown People's exhibit No. 2 in evidence, the original mug shots. James stated that he verified that the person from whom he purchased cocaine was the same person depicted in the mug shots, which were redacted and admitted into evidence.

Defendant was arrested on September 10, 1993 and admitted that he was Christopher Walker, the same person James identified in the mug shots. Prior to trial defendant moved to suppress, *inter alia*, any testimony as to James' pretrial identification of defendant. Following a *Wade*-type hearing, County Court held that the identification by James was confirmatory and not tainted and that no further *Wade* evidence was required. The parties stipulated to the admission of People's exhibit No. 3, a photograph taken of defendant on the night of his arrest, which more accurately reflected defendant's appearance at the time of the cocaine sale to James.

Defendant's request for a missing witness charge in connection with the People's failure to call the confidential informant to the stand was denied. Defendant was convicted of the crime of criminal sale of a controlled substance in the third degree and sentenced to an indeterminate term of imprisonment of 6 to 20 years.

There must be a reversal and a new trial. County Court erred in admitting into evidence the redacted mug shots in view of the testimony of James and Eisley that there was an ongoing investigation concerning defendant and that there was an outstanding warrant for his arrest. The reference to the investigation and the warrant in the circumstances of this case impermissibly brought defendant's criminal history to the attention of the jury and may have led the jury to resolve the issue of identification against defendant (*see, People v Bond,* 198 AD2d 509, 510; *People v Malone,* 173 AD2d 160, 161, *lv denied* 78 NY2d 969; *People v Hamilton,* 121 AD2d 176, 177-178). In this case the only issue at trial was the identification of defendant (*see, People v Caserta,* 19 NY2d 18, 21; *People v Polenca,* 204 AD2d 911). Defendant's identity was established by testimony of James and Eisley regarding James' confirmatory

photo identification of defendant shortly after the buy, in addition to an in-court identification by James. The mug shots, while redacted, were nonetheless classic front and side profile mug shots (*see, People v Bond, supra,* at 510) and, in view of James' and Eisley's testimony, their introduction into evidence was not required to prove identification. Further, the mug shots were not relevant to another issue at trial, such as impeachment or a change in defendant's appearance (*see, e.g., People v Lindsay,* 42 NY2d 9, 12; *People v Logan,* 25 NY2d 184, 195-196, *cert denied* 396 US 1020; *People v Malone, supra,* at 160-161). Thus, the reception of the redacted photos, which had little probative value, together with the testimony concerning the ongoing investigation and the warrant (even though there was an instruction to the jury that they were not to consider the warrant in determining the case), unfairly prejudiced defendant and deprived him of a fair trial (*see, People v Bond, supra,* at 510; *People v Malone, supra,* at 161; *People v Hamilton, supra,* at 177-178).

There is no merit to defendant's claim that County Court erred in not conducting a full *Wade* hearing; defendant argues that James' request to see a better picture immediately after the buy suggests that his testimony identifying defendant as the seller was tainted by his viewing of defendant's photographs (*see, People v Wharton,* 74 NY2d 921, 923; *People v Polenca, supra,* at 912). There was sufficient evidence to support County Court's finding that James' viewing of the second photograph was merely confirmatory, the "proper completion of an integral police procedure" (*People v Warton, supra,* at 923) and not impermissibly suggestive (*cf., People v Mato,* 83 NY2d 406, 410-411; *see, People v Gordon,* 76 NY2d 595, 599-600; *People v Munroe,* 185 AD2d 530, 531). Further, County Court made sufficient inquiry to establish that a full *Wade* hearing was not required (*see, People v Glover,* 191 AD2d 582, 583, *lv denied* 81 NY2d 1073; *People v Almonte,* 181 AD2d 736, *lv denied* 81 NY2d 1069). Nor is there any merit to defendant's claim that the testimony of James and Eisley as to James' confirmatory identification was impermissible bolstering (*see, People v Alvarez,* 211 AD2d 425; *People v Chapman,* 202 AD2d 297, 298, *lv denied* 83 NY2d 965).

Defendant's argument that County Court erred in refusing to issue a missing witness instruction to the jury, due to the prosecution's failure to call the confidential informant to the stand, is rejected. County Court cannot be said to have erred where the testimony of James, who made the controlled buy, was uncontradicted, and defendant has failed to show that the

testimony of the informant would have been anything other than cumulative (*see, People v Macana*, 84 NY2d 173, 177; *People v Ortiz*, 83 NY2d 989, 990-991; *People v Spinks*, 205 AD2d 842, 844, *lv denied* 84 NY2d 833).

Crew III, Casey, Yesawich Jr. and Spain, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Columbia County for a new trial.