(July 25, 2002)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM C. COLEMAN, Also Known as JAY JOHNSON, Appellant. [745 NYS2d 320] —Lahtinen, J. Appeal from a judgment of the County Court of Schenectady County (Eidens, J.), rendered September 30, 1999, upon a verdict convicting defendant of the crimes of murder in the first degree (two counts), attempted murder in the first degree and reckless endangerment in the first degree.

On October 19, 1998, defendant loaded his SKS semiautomatic assault rifle, entered the residence of his wife, Carol Dumont, at 1262 Main Street in the City of Schenectady, Schenectady County, shot and killed his son, William Coleman, Jr., in the living room, shot and killed Dumont in the kitchen and then shot at Jennifer Darling through the bathroom door where Darling had sought to escape from defendant. Defendant was subsequently indicted for murder in the first degree (two counts), murder in the second degree (four counts), attempted murder in the first degree, attempted murder in the second degree and reckless endangerment in the first degree (two counts). Convicted by a jury of two counts of murder in the first degree,[1] attempted murder in the first degree and reckless endangerment in the first degree, defendant was sentenced to two consecutive prison terms of life without parole on the first degree murder convictions and lesser consecutive sentences on the remaining convictions. Defendant now appeals.

Defendant first argues that the People failed to prove his guilt beyond a reasonable doubt, contending that there was no proof, direct or circumstantial, establishing that he was responsible for the death of Dumont or Coleman or that he shot at Darling. A review of the record thoroughly belies such contention. Darling testified that she was in Dumont's apartment on October 19, 1998, she saw defendant come in with a gun, saw him shoot Coleman, she and Dumont ran down the apartment hallway towards the kitchen as defendant pointed his gun in their direction, and she then ducked into the bathroom and closed the door, but she heard Dumont screaming, heard more gunshots and Dumont's screaming stopped.

---

1. Subsequent to defendant's arraignment, the People filed a notice pursuant to CPL 250.40 indicating that they would not seek the death penalty.

She further testified that she braced the bathroom door shut with her weight, heard defendant come back to the bathroom door, that he tried to push the door open and, failing to do so, then fired a shot through the door. She next heard the gun being dropped or set down and a motion sensitive Halloween decoration near the front door go off. She then emerged from the bathroom, found Dumont and Coleman dead and, panic stricken, called 911.

Jamaar Archer and Daniel Ortiz, witnesses for the People, each testified that they were next door in defendant's apartment at the time of the shootings. Archer stated that earlier in the day he saw defendant with the assault rifle and that defendant had loaded a clip and threatened to go next door and "hurt them." Later that day Archer heard sounds like firecrackers and a loud bang, went outside and saw defendant coming out of Dumont's apartment. He then heard defendant tell Ortiz, "I shot them." Ortiz testified that in the late afternoon of that day, he observed defendant with the assault rifle in his bedroom. Ortiz later heard shots being fired next door and, when defendant returned home, he told Ortiz that he had killed her, then stated that he had killed them. Another neighbor, Greg McGinnis, testified that about 6:00 P.M., he heard seven or eight gunshots, went outside and saw defendant coming out of the front door of 1262 Main Street. This eyewitness testimony, coupled with defendant's admissions and the circumstantial evidence flowing therefrom, provided overwhelming legal proof that defendant murdered his wife and son and attempted to murder Darling. Moreover, the requisite intent for such crimes may be inferred from defendant's actions described by the People's witnesses in their testimony (*see, People v Peets*, 286 AD2d 624, 624, *lv denied* 97 NY2d 686; *People v Francis*, 209 AD2d 539, 540, *lv denied* 85 NY2d 909) and testimonial evidence of defendant's prior threats of violence against Dumont (*see*, Penal Law § 125.27 [1] [a] [viii]; § 110.00).

The forensic proof that several of defendant's shots passed through the walls of Dumont's apartment, that a bullet from defendant's gun was found in a neighbor's pool rail and in a couch in an apartment next door, and that one of the bullets had passed through the wall of a garage some 125 feet away, provided legally sufficient proof of reckless endangerment in the first degree (*see, e.g., People v Moore*, 277 AD2d 596, 597, *lv denied* 96 NY2d 761; *People v Jones*, 269 AD2d 799, *lvs denied* 95 NY2d 852, 854; *People v Schoonmaker*, 103 AD2d 936, 937).

Defendant also contends that he was deprived of a fair trial as a result of erroneous trial rulings by County Court. We

disagree. The People offered evidence of defendant's past threats and acts of violence directed at Dumont only after County Court conducted a combined *Sandoval/Molineux/ Ventimiglia* hearing and the court properly balanced the probative value and prejudicial nature of this proof (*see, People v Ventimiglia*, 52 NY2d 350, 359-360). This evidence was correctly admitted as relevant to the issues of intent, motive and identity[2] (*see, People v Toland*, 284 AD2d 798, 804, *lv denied* 96 NY2d 942; *People v Bolarinwa*, 258 AD2d 827, 829, *lv denied* 93 NY2d 1014; *see also, People v Saunders*, 210 AD2d 164, 164, *lv denied* 84 NY2d 1038). Likewise, County Court's *Sandoval* ruling, which precluded the People's use of most of defendant's prior convictions as grounds for impeachment and reflected an appropriate assessment of the potential prejudice and probative value of those crimes upon which defendant could be questioned, was not an abuse of that court's discretion (*see, People v Mangan*, 258 AD2d 819, 821, *lv denied* 93 NY2d 927), nor did it deprive defendant of a fair trial.

Nor do we find any support for defendant's claim of prosecutorial misconduct since he has made no showing that the prosecutor's opening and closing arguments substantially prejudiced him (*see, People v Mitchell*, 288 AD2d 622, 623, *lv denied* 97 NY2d 758; *People v Geddes*, 258 AD2d 679, 681, *lv denied* 93 NY2d 970). He also failed to identify any *Brady* violations allegedly committed by the People. Additionally, the record reveals that defendant received meaningful representation from his defense counsel (*see, People v Baldi*, 54 NY2d 137, 147; *see also, People v Benevento*, 91 NY2d 708). Notably, defendant chose not to present any proof regarding his lack of culpability, including his intoxication (*see,* Penal Law § 15.25) or the defense of lack of capacity (*see,* Penal Law § 40.15), decisions that he acknowledged on the record were his alone. Moreover, there is nothing in the record even suggesting that defense counsel "prevented" defendant from testifying. At his sentencing, defendant claimed only that defense counsel advised him against testifying, a legitimate strategic decision given the avenues available to the People for cross-examination of defendant if he testified.

Finally, we reject defendant's contention that consecutive life sentences without the possibility of parole are cruel and unusual punishment. The sentences imposed were permitted by the applicable statutes and we find no abuse of discretion or extraordinary circumstance which would warrant our modification of the sentence (*see, People v Dolphy*, 257 AD2d 681, 685,

---

2. Defendant claimed that these crimes were committed by Ortiz.

*lv denied* 93 NY2d 872). To the extent that the balance of defendant's claims of error have been preserved for our review, they have been examined and are rejected as meritless.

Crew III, J.P., Carpinello, Mugglin and Rose, JJ., concur. Ordered that the judgment is affirmed.