146

[755 NYS2d 521]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JONATHAN PARKER, Appellant.

Fourth Department, February 7, 2003

**APPEARANCES OF COUNSEL**

*The Legal Aid Bureau of Buffalo, Inc.,* Buffalo (*Vincent F. Gugino* of counsel), for appellant.

*Frank J. Clark, District Attorney,* Buffalo (*Donna A. Milling* of counsel), for respondent.

*Eliot Spitzer, Attorney General,* Albany (*Robin A. Forshaw* of counsel), intervenor-respondent pro se.

**OPINION OF THE COURT**

HURLBUTT, J.

Defendant appeals from a judgment convicting him following a jury trial of murder in the first degree (Penal Law § 125.27

[1] [a] [i]), attempted murder in the first degree (§§ 110.00, 125.27 [1] [a] [i]), aggravated assault upon a police officer (§ 120.11), criminal possession of a weapon in the second degree (former § 265.03 [2]), and criminal possession of a weapon in the third degree (§ 265.02 [former (4)]). County Court sentenced defendant to life imprisonment without parole on the murder count, 25 years to life on the attempted murder count, 12½ to 25 years on the aggravated assault count, 7½ to 15 years on the second degree weapon possession count, and 3½ to 7 years on the third degree weapon possession count. The sentence on the murder count is to run consecutively to the sentence on the attempted murder count, and the other three sentences are to run concurrently with the sentence on the attempted murder count. Except for a technical modification of defendant's sentence, we affirm.

## I. *Factual Background*

On April 9, 1997, at approximately 12:45 A.M., two City of Buffalo police officers responded to a call concerning a stolen car. As they turned from East Parade Street onto Northampton Street, the officers observed a Ford Explorer being driven toward them, and they noticed an African-American man wearing a dark jacket, black sweatshirt, and dark pants crossing the street. One of the officers twice directed the man to stop, and when the man did not comply, the officer exited the patrol car. The other officer also exited the patrol car and, as he walked around the back of the car, he saw a muzzle flash come from the direction of the perpetrator and heard his fellow officer groan. Upon realizing that he himself had been shot in the right ankle, he radioed for police assistance, gave a description of the perpetrator, and advised in which direction the perpetrator had fled. The fellow officer died later that night of a gunshot wound.

The following day, police searched the neighborhood and recovered a jacket, a pager, a probation officer's business card, and a cap, all of which were linked to defendant at trial. The police also recovered the gun and some bullets. The most damaging evidence at trial came from the two passengers in the Ford Explorer at the time of the shooting. One of the passengers had known defendant for a couple of years and had recognized him on the night of the shootings; she testified that defendant fired his gun first and that the police officer returned fire. The other passenger had known defendant for seven years and, having had a clear view of defendant's face, had no trouble

identifying defendant. He did not, however, know whether defendant or the officer had fired first. Additional circumstantial evidence supporting the identification testimony came from a witness who had known defendant for five years; approximately five seconds after hearing 10 or 11 gunshots, the witness saw defendant running down the street, wearing a black leather coat and blue jeans and carrying a gun in his hand.

Defendant was arrested and indicted, and the People thereafter filed a notice of intent to seek the death penalty. Upon trial, the jury found defendant guilty of, inter alia, murder in the first degree, and determined following a proceeding conducted pursuant to CPL 400.27 (1) that defendant should be sentenced to life imprisonment without parole for that crime.

## II. *Issues Related to the Death Penalty*

■ We first address the challenges raised by defendant to New York's statutory scheme for the death penalty. First, defendant contends that the death penalty statutes (citing Penal Law § 125.27; CPL 400.27) constitute cruel and unusual punishment and deprived him of due process and equal protection. We conclude, however, that we should not address defendant's general constitutional challenges to the death penalty inasmuch as defendant was sentenced to life imprisonment without parole. It is well settled that courts should not address a constitutional issue if the case may be disposed of in any other way (*see People v Harris*, 98 NY2d 452, 496-497; *People v Felix*, 58 NY2d 156, 161, *appeal dismissed* 464 US 802; *see also Matter of Beach v Shanley*, 62 NY2d 241, 254). According to principles of judicial restraint, constitutional issues should not be decided " 'unless their disposition is necessary to the appeal' " (*Matter of Clara C. v William L.*, 96 NY2d 244, 250, quoting *People v Carcel*, 3 NY2d 327, 330). Here, even if we were to address defendant's general constitutional challenges to the death penalty and decide them in defendant's favor, our decision with respect to those constitutional challenges would not change the ultimate result of defendant's appeal. Thus, we do not address those challenges.

■ Second, defendant contends that CPL 270.20 (1) (f) is unconstitutional because it permits a "death-qualified" jury—a jury composed of members who are able to consider the death penalty—to determine a capital defendant's guilt or innocence. That contention is without merit, with respect to both the United States and New York Constitutions. The United States

Supreme Court has concluded that the United States Constitution "does not prohibit the States from 'death qualifying' juries in capital cases" (*Lockhart v McCree,* 476 US 162, 173). The Court of Appeals recently concluded that there is "no state constitutional impediment to CPL 270.20 (1) (f)" (*Harris,* 98 NY2d at 480) and that "[n]othing in the language of the state's constitutional counterpart of the Sixth Amendment right to a jury trial (NY Const, art I, § 2) or our jurisprudence suggests that defendant is entitled to greater protection here on state constitutional grounds" (*id.*).

■ Third, defendant contends that his prosecution was affected by the constitutional infirmity of CPL 220.10 (5) (e) and 220.30 (3) (b) (vii). Those statutory provisions were determined to be unconstitutional by the Court of Appeals in *Matter of Hynes v Tomei* (92 NY2d 613, 626-627, *cert denied* 527 US 1015), a case decided after defendant was convicted and sentenced herein. We disagree with defendant, and conclude that his prosecution was not affected by the constitutional infirmity of those statutes.

Before examining the applicability of the decision in *Hynes* to this case, it is helpful to examine the decision of the United States Supreme Court in *United States v Jackson* (390 US 570, 581-583), upon which the decision of the Court of Appeals in *Hynes* is based. In *Jackson,* the Supreme Court struck down the death penalty provision of the Federal Kidnaping Act (18 USC § 1201 *et seq.*) on the ground that it needlessly encouraged defendants to plead guilty and to waive the right to a jury trial in order to avoid exposure to the death penalty. Under that provision, a defendant would face the death penalty only if he or she did not plead guilty and instead chose to exercise the right to a jury trial. The Supreme Court determined that "[t]he inevitable effect of any such provision, is of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial" (*Jackson,* 390 US at 581).

In *Corbitt v New Jersey* (439 US 212), a case determined by the Court of Appeals to be distinguishable from *Hynes,* defendant was convicted of murder in the first degree after a trial and was sentenced to life imprisonment. The Supreme Court rejected a *Jackson* challenge to the New Jersey homicide statutes, which provided for a mandatory sentence of life imprisonment for a defendant convicted of murder in the first degree after trial, but for a sentence of life imprisonment or " 'the same as that imposed upon a conviction of murder in the

second degree'" for a defendant who pleaded non vult or nolo contendere (*id.* at 215). Noting that it was a "material fact" that the maximum penalty was life imprisonment and not death (*id.* at 217), the Court determined that there was no *Jackson* infirmity in the statutes because a defendant who pleaded guilty could receive the same punishment as a defendant who exercised the right to a jury trial, i.e., life imprisonment, and the "risk of that punishment is not completely avoided by pleading *non vult*" (*id.*). Thus, by its decision in *Corbitt*, the Supreme Court made clear that only those statutory schemes that reserve the maximum penalty for defendants who exercise the right to trial are unconstitutional under *Jackson.*

In *Hynes* and its companion case, *Matter of Relin v Connell*, the Court of Appeals struck down CPL 220.10 (5) (e) and 220.30 (3) (b) (vii) as facially invalid under a *Jackson* analysis. Under those statutory provisions, the same provisions at issue here, a defendant who pleaded guilty could escape the greater penalty of death, but a defendant who maintained his innocence and exercised the right to trial was exposed to it (*see Hynes,* 92 NY2d at 626). The Court determined that the statutory provisions at issue must be excised from the statutes in order to cure an unconstitutional chilling of the rights of defendants against whom a notice to seek the death penalty has been filed because the statutory scheme—just as that in *Jackson*—allows the death penalty only upon conviction after trial and not upon conviction by guilty plea (*see id.* at 620). Notably, the Court distinguished *Corbitt* on the ground that the statute in that case provided the same maximum penalty for all defendants, i.e., life imprisonment, regardless of whether they were convicted by plea or upon trial (*see id.* at 625). Thus, the Court in *Hynes* wrote that, unlike the New York sentencing scheme, the New Jersey statute did not "'reserve the maximum punishment' for murder for those who insist on a jury trial'" (*id.*, quoting *Corbitt*, 439 US at 217). In *Hynes*, the Court's solution to the *Jackson* violation was to eliminate the option to plead guilty to first degree murder once a notice of intent to seek the death penalty is pending. Thus, under the post-*Hynes* statutory scheme, it cannot be said that the maximum penalty is reserved for those defendants who *exercise the right* to trial, inasmuch as defendants against whom a notice of intent to seek the death penalty is pending *have no choice* but to go to trial. A defendant against whom a notice of intent to seek the death penalty has not been filed or has been filed and then

withdrawn may plead guilty to murder in the first degree, and a defendant against whom a notice of intent to seek the death penalty is pending may plead guilty to a lesser crime (*see id.* at 629).

"[T]he first full appeal of a sentence of death in New York in almost 20 years" came before the Court of Appeals in *Harris* (98 NY2d at 471). In *Harris*, the defendant was convicted after trial and sentenced to death before the Court issued its decision in *Hynes*. The Court in *Harris* thus applied *Hynes* by vacating the sentence of death and remitting the matter to Supreme Court for the imposition of a sentence of life imprisonment without parole pursuant to Penal Law §§ 60.06 and 70.00 (5). The Court did not allow for the sentencing option of 20 to 25 years to life imprisonment, an option available only to those defendants who plead guilty (*see* CPL 400.27 [1]; Penal Law § 70.00 [2] [a]; [3] [a] [i]).

Here, as in *Harris*, defendant was convicted and sentenced before the Court of Appeals issued its decision in *Hynes*. Unlike in *Harris*, however, defendant herein was not affected by the constitutional infirmity of the statutory provisions at issue in *Hynes* and *Harris*. "[Defendant] risked death, but suffered no detriment as a result of that risk. Consequently, he cannot now raise the issue as to what might have occurred had the jury recommended death, or what might have happened had he been dissuaded from choosing a jury trial" (*Parker v United States*, 400 F2d 248, 252, *cert denied* 393 US 1097). The sentence of life imprisonment without parole may also be imposed upon a defendant who pleads guilty, and therefore the imposition of that sentence has not unconstitutionally penalized the exercise of defendant's Fifth and Sixth Amendment rights (*see Corbitt*, 439 US at 216-221; *cf. Jackson*, 390 US at 581-583; *Harris*, 98 NY2d at 496; *Robtoy v Kincheloe*, 871 F2d 1478, 1481, *cert denied sub nom. Robtoy v Callahan,* 494 US 1031, 1061, *reh denied* 495 US 966).

We have examined defendant's remaining contentions concerning the death penalty statutes and conclude that they lack merit.

### III. *Issues Related to the Jury*

### A. *Defendant's Challenges for Cause*

■ Defendant contends that the court erred in denying several of his challenges for cause to prospective jurors. Four of those prospective jurors, although initially expressing "consci-

entious opinions either against or in favor of [the death penalty] as to preclude [them] from rendering an impartial verdict or from properly exercising the discretion conferred upon [them]" (CPL 270.20 [1] [f]), nevertheless made clear that they would be able to follow their oaths to act impartially and to exercise the discretion conferred upon them in the determination of a sentence pursuant to CPL 400.27 (*see Harris*, 98 NY2d at 484-485). Upon examining the individual statements of prospective juror H. in context and as a whole, we conclude that she gave an unequivocal assurance of impartiality (*see People v Chambers*, 97 NY2d 417, 419).

Defendant's challenges for cause pursuant to CPL 270.20 (1) (b) with respect to two prospective jurors based on their alleged unwillingness to consider certain mitigating factors is not preserved for our review because defendant did not raise the issue of a correlation between mitigating factors and the guilt phase of the trial (*see Harris*, 98 NY2d at 486-487). Furthermore, defendant failed to establish that those prospective jurors should have been dismissed for cause pursuant to CPL 270.20 (1) (f) because he failed to establish any correlation between their views on mitigating factors and their views on the death penalty or "[their] ability to exercise sentencing discretion conferred by statute" (*Harris*, 98 NY2d at 487).

We agree with defendant that two prospective jurors initially seemed confused about the burdens of proof. However, upon examining the statements of those prospective jurors in their entirety (*see People v Johnson*, 94 NY2d 600, 615-616), and giving due deference to the court's determination (*see People v Hagenbuch*, 267 AD2d 948, *lv denied* 95 NY2d 797), we conclude that the court did not abuse its discretion in denying defendant's challenges for cause with respect to those prospective jurors (*see id.*).

The contention of defendant that he was "forced" to accept a certain prospective juror is without merit. The record establishes that, in using his last peremptory challenge, defendant had a choice between that prospective juror and another prospective juror, and opted to use the peremptory challenge to exclude the other prospective juror. "A hard choice is not the same as no choice" (*United States v Martinez-Salazar*, 528 US 304, 315), and thus we cannot conclude that defendant was "forced" to accept the prospective juror at issue. Defendant further contends that the court erred in denying his motions for additional peremptory challenges, which resulted in the seating of that prospective juror, whom defendant describes as an

"incompetent juror." We reject defendant's characterization of that prospective juror. Her statements, "taken in context and as a whole, were unequivocal" that she could be impartial (*Chambers*, 97 NY2d at 419). Defendant also contends that the constitutionality of CPL 270.20 (2) was implicated when he had used all of his peremptory challenges and was forced to choose between two jurors whom he had unsuccessfully challenged for cause. That contention, however, is premised on the factual inaccuracy that defense counsel exercised his last peremptory challenge with respect to prospective juror L. when in fact the record establishes that defendant exercised his last peremptory challenge with respect to prospective juror C.

### B. *The People's Challenges for Cause*

Defendant contends that the court erred in granting several of the People's challenges for cause and that he was thereby deprived of his right to a fair, impartial, and representative jury. We reject that contention. The court properly granted the People's challenge for cause with respect to four prospective jurors who stated that, although there may be cases in which the death penalty would be warranted, they would have difficulty taking an active role in imposing it (*see* CPL 270.20 [1] [f]; *see also Harris*, 98 NY2d at 484-485).

The court also properly granted the People's challenge for cause with respect to a prospective juror who failed to disclose a prior conviction of driving while intoxicated and who, upon further questioning, stated that she believed that law enforcement officers planted illegal drugs in her vehicle at the time. It was within the court's discretion to determine that the state of mind of that prospective juror would likely preclude her from rendering an impartial verdict (*see* CPL 270.20 [1] [b]; *see also People v Webb*, 285 AD2d 659, 660, *lv denied* 97 NY2d 689; *People v Traylor*, 283 AD2d 1013, *lv denied* 96 NY2d 869; *see generally People v Arnold*, 96 NY2d 358, 363).

Similarly, the court did not abuse its discretion in granting the People's challenge for cause with respect to a prospective juror who initially stated that she did not agree with the death penalty and would not impose it in this case owing to her moral sense, but within the course of questioning, equivocated on that position. It was within the court's discretion to determine that the prospective juror's promise to be impartial was not credible (*see generally Arnold*, 96 NY2d at 363). We further conclude that the court properly granted the People's challenge for cause pursuant to CPL 270.20 (1) (b) with respect to a pro-

spective juror who stated that he could not promise that the possibility of the punishment of death would not influence his decision with respect to defendant's guilt or innocence.

Defendant's contentions concerning the remaining prospective jurors challenged for cause by the People are without merit.

## C. *Formation of the Jury Panel*

Defendant contends that he was denied his right to a jury representative of the community because of the underrepresentation of African-Americans and young people on the jury panel and the inadequacy of the various lists from which the jury panel was drawn. The court held a hearing on this issue, at which the New York State Commissioner of Jurors for Erie County testified that gender, age, and race are not considered in compiling the juror source list, that he followed the Judiciary Law in obtaining juror names, and that juror names were drawn randomly from a source list compiled by the New York State Office of Court Administration. In response, defendant failed to establish that the systematic exclusion of a particular group is caused by means " 'inherent in the particular jury-selection process utilized' " (*People v Guzman*, 60 NY2d 403, 411, cert denied 466 US 951, quoting *Duren v Missouri*, 439 US 357, 366; see *People v McCann*, 292 AD2d 804, 805, lv denied 98 NY2d 653; *People v Jordan*, 261 AD2d 947, lv denied 93 NY2d 1003).

Defendant's equal protection claim concerning the jury pool must also fail because defendant failed to meet his burden of proving "the degree of underrepresentation * * *, by comparing the proportion of the group in the total population to the proportion called to serve as * * * jurors, over a significant period of time" (*Casteaneda v Partida*, 430 US 482, 494).

## D. *Defendant's Batson Challenges*

Defendant contends that the court erred in denying several of his *Batson* challenges (see generally *Batson v Kentucky*, 476 US 79). We disagree. As a preliminary matter, we note that defendant failed to preserve for our review his contention that the court did not follow the requisite three-step procedure in evaluating his *Batson* challenges (see *People v De Los Angeles*, 270 AD2d 196, 198, lv denied 95 NY2d 889). Furthermore, we conclude that, in denying defendant's *Batson* challenges, the court thereby implicitly determined that the race-neutral explanations given by the prosecutor for exercising peremptory

challenges with respect to those prospective jurors were not pretextual (*see People v Pena*, 251 AD2d 26, 34, *lv denied* 92 NY2d 929). We have examined the record with respect to the prospective jurors at issue and conclude that the court did not abuse its discretion in determining that the prosecutor presented a race-neutral explanation with respect to each of them (*see People v Payne*, 88 NY2d 172, 181; *People v Montana*, 298 AD2d 934). Defendant failed to establish that any of the explanations were pretextual (*see Payne,* 88 NY2d at 181; *People v Diaz*, 269 AD2d 766, *lv denied* 95 NY2d 852).

### E. *Disqualification of a Seated Juror*

Contrary to defendant's contention, the court properly granted the People's motion to discharge an impaneled juror for cause. After the juror was sworn but before trial had commenced, the juror informed the court that she had been conducting some "biblical research" and had concluded that she could never vote to impose the death penalty. The juror's conscientious opinion against the death penalty constitutes a valid challenge for cause pursuant to CPL 270.20 (1) (f) (*see Harris,* 98 NY2d at 484). Thus, we conclude that the court properly determined that the juror was grossly unqualified pursuant to CPL 270.35 (1) to sit as a juror on this case and discharged her for cause (*see People v Williams*, 242 AD2d 917, 918, *lv denied* 91 NY2d 899, citing *People v Rodriguez*, 71 NY2d 214, 219).

### F. *Alleged Misconduct of a Prospective Juror*

Contrary to the further contention of defendant, the court did not err in denying his motion for a mistrial based on the alleged misconduct of a prospective juror. A person who mistakenly believed that a prospective juror was actually an impaneled juror on defendant's case allegedly overheard the prospective juror describe defendant to two of the prospective juror's coworkers as "the one who killed the cop." The person who allegedly overheard the statement then used the statement in an article for a newspaper publication dated September 9, 1998, the date on which the trial commenced. On September 23, 1998, defense counsel moved for a mistrial, arguing that, based on the bias of the prospective juror, he would have exercised a challenge for cause instead of a peremptory challenge with respect to her. The court did not err in denying the motion. The court interviewed the person who wrote the article, who stood by her allegations, but the prospective juror averred

that she did not make the statement and the two coworkers averred that they did not hear her make the statement. We see no reason to disturb the court's resolution of that credibility issue (*see generally People v Rodriguez*, 291 AD2d 317, *lv granted* 98 NY2d 701; *People v Flagg*, 237 AD2d 955, *lv denied* 90 NY2d 893, 895).

### IV. *Issues Related to Identification Testimony*

■ Defendant contends that the court erred in denying his motion to suppress the identification testimony of the officer who had been shot in the right ankle because the officer's identification was unreliable and tainted by suggestion. The officer testified at the suppression hearing that he was not able to identify defendant right after the shooting and was able to identify defendant with only 70% certainty at a subsequent lineup. In addition, another police officer testified at the suppression hearing that he had informed the injured officer the day after the shooting that the police had found a pager belonging to someone named Parker. We conclude that any error in the admission of the officer's in-court identification of defendant is harmless beyond a reasonable doubt. There is overwhelming evidence of defendant's guilt, including the identification testimony of the two passengers in the Ford Explorer who personally knew defendant and the testimony of a witness who saw defendant running down the street seconds after the witness had heard gunshots (*see People v Owens*, 74 NY2d 677, 678; *People v Armstrong*, 288 AD2d 484, 485, *lv denied* 97 NY2d 701; *see generally People v Crimmins,* 36 NY2d 230, 237). We further conclude that the court erred in allowing the People to use classic front and side profile mugshots of defendant in a photographic array in connection with the testimony of the officer (*see People v Walker*, 217 AD2d 856, 857-858; *People v Bond*, 198 AD2d 509, 510; *see also People v Malone*, 173 AD2d 160, *lv denied* 78 NY2d 969). We conclude, however, that the error is harmless beyond a reasonable doubt in light of the overwhelming evidence of defendant's guilt (*see Owens*, 74 NY2d at 678; *Armstrong*, 288 AD2d at 485; *see also Crimmins,* 36 NY2d at 237).

Defendant further contends that the court erred in allowing "resemblance testimony" from a witness for the People (*see generally People v Sanders*, 108 AD2d 316, 319, *affd* 66 NY2d 906). Defense counsel's general objection to the prosecutor's question to the witness, i.e., whether the witness saw anyone in court who resembled the person that he had seen running

from the crime scene, did not preserve defendant's present contention for our review (*see People v Farrell*, 266 AD2d 811; *People v George*, 255 AD2d 881; *see generally People v Clarke*, 81 NY2d 777, 778). In any event, we conclude that any error in the admission of the resemblance testimony is harmless beyond a reasonable doubt in view of the overwhelming evidence of defendant's guilt, including the identification testimony of eyewitnesses (*see Owens*, 74 NY2d at 678; *Armstrong*, 288 AD2d at 485; *see also Crimmins*, 36 NY2d at 237).

### V. *Remaining Issues*

█ Defendant contends that he did not have the requisite intent to commit murder in the first degree or attempted murder in the first degree. We note, however, that intent "is an issue of fact that often must be determined only on the basis of the criminal act and the circumstances surrounding its commission" (*People v Hernandez*, 184 AD2d 439, 440, *lv denied* 80 NY2d 904, citing *People v Bracey*, 41 NY2d 296, 301), and here defendant's intent may be inferred from defendant's actions, as described in the testimony of the People's witnesses (*see People v Coleman*, 296 AD2d 766). We conclude from our review of the record that the conviction of murder in the first degree and attempted murder in the first degree is supported by legally sufficient evidence and that the verdict is not against the weight of the evidence with respect to those crimes (*see People v Bleakley*, 69 NY2d 490, 495).

█ Defendant further contends that the court failed to inform him of the contents of two jury notes. The record establishes that the jury, counsel, and defendant were present when the court received the notes and issued responses to the jury, and defense counsel's failure to object at a time when the court could have corrected the alleged errors renders defendant's contention unpreserved for our review (*see People v Johnson*, 289 AD2d 1008, 1009, *lv denied* 97 NY2d 756; *see also People v Starling*, 85 NY2d 509, 516).

█ We reject defendant's contention that the admission of testimony concerning DNA population statistics was without proper foundation and constitutes reversible error. "Defendant's challenges to the population studies relied upon to estimate the probability of a coincidental match 'go not to admissibility, but to the weight of the evidence, which should be left to the trier of fact'" (*People v Knight*, 280 AD2d 937, 938, *lv denied* 96 NY2d 864, quoting *People v Wesley*, 83 NY2d 417, 427).

■ We also reject defendant's contention that the court erred in denying defense counsel's request to recharge the jury with respect to the difference between depraved indifference murder and murder in the first degree. The court properly explained the difference between the requisite states of mind for those crimes (*see generally People v Robinson*, 145 AD2d 184, 185-186, *affd* 75 NY2d 879; *People v Gallagher*, 69 NY2d 525, 529-530; *People v Horning*, 263 AD2d 955, *lv denied* 94 NY2d 824). We conclude that the charge as a whole conveyed the proper standard to the jury (*see generally People v Coleman*, 70 NY2d 817, 819; *People v Foss*, 267 AD2d 505, 509, *lv denied* 94 NY2d 947).

■ Defendant contends that the admission of the transcript of a prior proceeding in which he entered a plea of guilty to one count of criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]) and two counts of attempted criminal possession of a weapon in the third degree (§§ 110.00, 265.02 [4]) deprived him of a fair trial because the transcript constituted inadmissible hearsay. We disagree. The People's theory for defendant's motive in shooting at the officers in this case was that defendant was awaiting sentencing on those three counts and therefore wanted to avoid being apprehended for possessing a loaded weapon. The transcript of the prior plea proceeding, which the prosecutor herein agreed should exclude any mention of the crimes to which defendant pleaded guilty, established that the court had informed defendant that it would not be bound by its sentencing commitment if defendant were arrested between the time of his plea and sentencing. Sentencing in that case was scheduled for two weeks after the shooting herein occurred. Thus, the plea transcript was admissible on the issue of defendant's motive for shooting at the officers, and the court minimized any prejudice to defendant by instructing the jury that the plea transcript was to be considered only with respect to that issue (*see People v McMurray*, 271 AD2d 460; *People v Robinson*, 200 AD2d 693, 693-694, *lv denied* 84 NY2d 831).

Contrary to defendant's contention, the sentence is clearly specified. First, defendant must complete any sentence he is serving in connection with prior crimes. Then, he must serve the sentence for attempted murder (count three), and the sentences for aggravated assault (count five), criminal possession of a weapon in the second degree (count seven), and criminal possession of a weapon in the third degree (count eight) are to run concurrently with that sentence. When those sentences are

completed, defendant will begin serving the sentence for murder (count one).

We conclude, however, that there is a technical error in defendant's sentences that requires modification. The court directed that the sentence imposed on count seven run concurrently only with the sentence imposed on count three, and not count one. The People's bill of particulars, however, recites that defendant fired his weapon at both officers, killing one and wounding the other. Therefore, the sentence imposed on count seven should run concurrently with the sentences imposed on both counts one and three.

## VI. *Conclusion*

Accordingly, we conclude that the judgment should be modified by directing that the sentence imposed on count seven shall run concurrently with the sentence imposed on count one and, as so modified, affirmed.

WISNER, J.P., SCUDDER, GORSKI and HAYES, JJ., concur.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously modified, on the law, by directing that the sentence imposed on count seven shall run concurrently with the sentence imposed on count one and, as modified, the judgment is affirmed.