■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE J. SANTIAGO, Appellant. [839 NYS2d 369]—

Appeal from a judgment of the Monroe County Court (William H. Bristol, J.), rendered July 10, 2000. The judgment convicted defendant, upon a jury verdict, of murder in the first degree (four counts), murder in the second degree (two counts) and attempted murder in the first degree (three counts).

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously modified on the law by reversing those parts convicting defendant of murder in the second degree and dismissing counts four and six of the indictment and by vacating the sentences imposed for murder in the first degree and as modified the judgment is affirmed, and the matter is remitted to Monroe County Court for resentencing on counts one, two, three and five of the indictment.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of four counts of murder in the first degree (Penal Law § 125.27 [1] [a] [vii], [viii]; [b]), two counts of murder in the second degree (§ 125.25 [3]) and three counts of attempted murder in the first degree (§§ 110.00, 125.27 [1] [a] [vii]; [b]), arising from the deaths of two boys, ages 2 and 14, and attacks upon three of their female relatives. We reject the contention of defendant that County Court erred in refusing to suppress certain physical evidence seized from a kennel behind his residence. The record of the suppression hearing establishes that defendant's mother freely and repeatedly consented to a search of the residence, and she also told the police officers that

they could search the area around the house. She fully cooperated with the police officers in that search, which included the opening of a safe inside the house and the relocation of one of defendant's dogs to enable the police to search the area of the house where that dog was confined. Her only reservation in consenting to the search was that she could not allow the officers to enter an outdoor kennel because the dog confined there could be controlled only by defendant. As a result, the officers waited until Animal Control officers arrived and secured the dog before searching that area. We conclude that defendant's mother gave a comprehensive consent to search the house and the areas surrounding it, and her later indication that the police could not enter the kennel based on the presence of the dog "is insufficient to impose a limitation on or constitute a revocation of the consent" (*People v Jakubowski*, 100 AD2d 112, 118 [1984]).

Contrary to the further contention of defendant, his statements to the police were properly admitted in evidence at trial. Defendant was not placed under arrest until after he was identified as the perpetrator by two of the surviving victims at the hospital, at which time the police had probable cause to arrest him (*see People v Williams*, 30 AD3d 980, 981 [2006], *lv denied* 7 NY3d 852 [2006]). The fact that he was placed in handcuffs prior to the showup identification at the hospital does not transform the otherwise valid detention of defendant for showup purposes into a full-blown arrest (*see People v Allen*, 73 NY2d 378, 380 [1989]; *People v Barnes*, 4 AD3d 433 [2004], *lv denied* 3 NY3d 636 [2004]; *see also People v Jennings*, 281 AD2d 285 [2001], *lv denied* 96 NY2d 903 [2001]).

Furthermore, we reject the contention of defendant that his statements to the police should have been suppressed because, before he was advised of his *Miranda* rights, he told them that he had previously sold drugs. That statement does not require suppression of the post-*Miranda* statements because it was nonresponsive to the officer's question that immediately preceded the statement concerning the drugs and thus was spontaneous (*see People v Youngblood*, 294 AD2d 954, 954-955 [2002], *lv denied* 98 NY2d 704 [2002]; *People v DePonceau*, 275 AD2d 994 [2000], *lv denied* 95 NY2d 962 [2000]). Furthermore, the officer's question was permissible because its purpose was to determine whether defendant was under the influence of drugs. The question was "similar to pedigree questions or those necessary for providing for defendant's physical needs and clearly w[as] not for the purpose of attempting to inculpate him" (*People v Greenleaf*, 222 AD2d 838, 840 [1995], *lv denied* 87

NY2d 973 [1996]). The contention of defendant that the police questioned him concerning a prior arrest in Syracuse before advising him of his *Miranda* rights is not supported by the record.

Contrary to defendant's further contention, the court did not abuse its discretion in admitting autopsy and hospital photographs of the victims. "Photographic evidence should be excluded only if its sole purpose is to arouse the emotions of the jury and to prejudice the defendant," and that was not the sole purpose of the photographs in this case (*People v Pobliner*, 32 NY2d 356, 370 [1973], *rearg denied* 33 NY2d 657 [1973], *cert denied* 416 US 905 [1974]; *see People v Williams*, 28 AD3d 1059, 1060 [2006], *affd* 8 NY3d 854 [2007]). Defendant was not deprived of a fair trial when the prosecutor displayed the photographs to the jury during his summation and, contrary to the further contention of defendant, the comments of the prosecutor on summation "were fair comment on the evidence and 'did not exceed the broad bounds of rhetorical comment permissible in closing argument' " (*Williams*, 28 AD3d at 1061, quoting *People v Galloway*, 54 NY2d 396, 399 [1981]). In any event, even assuming, arguendo, that the prosecutor engaged in misconduct during his summation, we conclude that such misconduct was not "so egregious as to deprive defendant of a fair trial" (*id.* at 1060; *see People v Melendez*, 11 AD3d 983, 984 [2004], *lv denied* 4 NY3d 888 [2005]).

We agree with defendant, however, that those parts of the judgment convicting him of second degree felony murder must be reversed and counts four and six of the indictment dismissed. In addition to second degree felony murder, defendant was also convicted of first degree intentional felony murder. It is now settled "that felony murder [pursuant to Penal Law § 125.25 (3)] is a lesser-included crime under intentional felony murder" (*People v Miller*, 6 NY3d 295, 303 [2006]), and thus those counts must be dismissed pursuant to CPL 300.40 (3) (b). We therefore modify the judgment accordingly.

We also agree with defendant that the sentences imposed for first degree murder must be vacated on the ground that they were imposed after the court gave the deadlock instruction contained in CPL 400.27 (10). "Although defendant did not object when the instruction was given, he had sought a ruling prior to trial that CPL 400.27 (10) was unconstitutional under the Federal and State Constitutions, both on its face and as applied," and defendant thereby preserved his contention for our review (*People v LaValle*, 3 NY3d 88, 116 [2004]). The Court of Appeals has determined that the instruction at issue violates

the NY Constitution because "a vote for life imprisonment or death, driven by the fear that a defendant might be parole-eligible if jurors fail to reach unanimity, does not satisfy the heightened standard of reliability required by our State Constitution" (*id.* at 128). Consequently, we further modify the judgment by vacating the sentences imposed for murder in the first degree, and we remit the matter to County Court for resentencing on counts one, two, three and five of the indictment. We note that, upon resentencing on those counts, the court may impose a sentence of life imprisonment without parole, or life imprisonment with a minimum period of imprisonment of not less than 20 years nor more than 25 years (*see* Penal Law § 70.00 [3] [a] [i]; [5]). Defendant's further contention, that the remaining sentences may not be ordered to run consecutively to the sentences on the first degree murder counts, is moot in light of our determination. In any event, that contention is without merit because such sentences are permitted by the applicable statutes (*see People v Coleman*, 296 AD2d 766, 768-769 [2002], *lv denied* 99 NY2d 534 [2002]).

Contrary to the additional contention of defendant, he failed to make the requisite prima facie showing of discrimination by the prosecutor with respect to the prosecutor's use of peremptory challenges against female prospective jurors, and thus the court properly denied defendant's *Batson* challenges without requiring the prosecutor to come forward with gender-neutral explanations for his use of those peremptory challenges. "A disproportionate number of strikes used against members of a particular [gender] may be indicative of a discriminatory pattern, but such a fact is rarely conclusive in the absence of other facts or circumstances" (*People v Brown*, 97 NY2d 500, 507 [2002]). No such facts or circumstances exist here and, although the prosecutor exercised the majority of his peremptory challenges against female prospective jurors, he peremptorily excused less than 50% of the women in the jury pool from which the petit jury was chosen. Consequently, because "no showing was made beyond the disproportionate number of strikes [against women], defendant['s] claims fell short of the requisite burden" (*id.; see People v Jenkins*, 84 NY2d 1001, 1003 [1994]; *see generally People v Childress*, 81 NY2d 263, 267 [1993]).

We have considered defendant's remaining contentions and conclude that they are moot in light of our determination, or they are without merit. Present—Martoche, J.P., Smith, Centra, Lunn and Peradotto, JJ.