People v Miller (2018 NY Slip Op 01358)





People v Miller


2018 NY Slip Op 01358


Decided on March 1, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 1, 2018

107463

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
MATTHEW MILLER, Appellant.

Calendar Date: January 19, 2018

Before: Garry, P.J., McCarthy, Mulvey, Aarons and Pritzker, JJ.


Andrew Kossover, Public Defender, Kingston (Michael K. Gould of counsel), for appellant.
D. Holley Carnright, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.


Mulvey, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered April 3, 2015, upon a verdict convicting defendant of the crime of aggravated cruelty to animals.
In March 2014, investigators with the Ulster County Society for the Prevention of Cruelty to Animals (hereinafter SPCA) and county law enforcement officials arrived at defendant's residence in response to a report that a dog had been shot at the property. Upon being questioned about the report, defendant claimed that a stray dog had wandered onto his property and began fighting with his roommate's dog, as a result of which the stray dog had been seriously wounded. When asked by an investigator if he had contacted a veterinarian, defendant indicated that he had not,
adding that the dog's injuries were so significant that he shot the dog to put it out of its misery. Defendant was then handcuffed and placed in a vehicle with two SPCA investigators, where he was further questioned and again admitted that he had shot the dog and claimed that the shooting was a mercy killing. When one of the investigators suggested that a physical examination of the dog's remains could substantiate defendant's claims, defendant offered to use a backhoe that was situated on his parents' neighboring property to exhume the dog. Defendant was immediately uncuffed and released from the vehicle and, after gasoline was procured and provided to defendant, he retrieved the backhoe from where it was parked and engaged it to unearth a canvas bag that contained the dog's remains. Law enforcement officials thereafter took possession of the remains and departed the premises.
Eight days later, defendant was arrested and charged with aggravated cruelty to animals. Prior to trial, he moved to suppress his statements to law enforcement officials, as well as the physical evidence seized. Following a hearing, County Court ruled that defendant's initial statements were voluntary and not the product of custodial interrogation, but found that defendant was in custody when he was handcuffed and placed in the SPCA vehicle and, because no adequate Miranda warnings were given, the statements that he made while in the vehicle were inadmissible. The court further found that the physical evidence of the dog's remains was admissible on the ground that, among other things, defendant had voluntarily consented to the search. At the conclusion of the ensuing jury trial, defendant was found guilty as charged and sentenced to one year in jail. Defendant now appeals, solely challenging the denial of that part of his motion that sought to suppress the physical evidence.
Because defendant voluntarily consented to the search that led to the discovery of the dog's remains, we affirm. Whether consent has been voluntarily given is a question of fact to be determined based on the totality of the circumstances (see Schneckloth v Bustamonte, 412 US 218, 227 [1973]; People v Gonzalez, 39 NY2d 122, 128-129 [1976]; People v Williford, 124 AD3d 1076, 1078 [2015], lv denied 25 NY3d 1209 [2015]). "Consent can be established by conduct as well as words" (People v Bunce, 141 AD3d 536, 537 [2016] [internal quotation marks, brackets and citations omitted], lv denied 28 NY3d 969 [2016]; see People v Reed, 151 AD3d 1821, 1824 [2017], lv denied 30 NY3d 952 [2017]; People v Sinzheimer, 15 AD3d 732, 734 [2005], lv denied 5 NY3d 794 [2005]), and it is settled that "the voluntariness of a consent to search is not vitiated . . . by the failure to give Miranda warnings to an accused while subject to custodial interrogation" (People v McCray, 96 AD3d 1480, 1481 [2012] [internal quotation marks, brackets and citation omitted], lv denied 19 NY3d 1104 [2012]; accord People v Brown, 107 AD3d 1305, 1307 [2013], lv dismissed 23 NY3d 1018 [2014]; People v May, 100 AD3d 1411, 1412 [2012], lv denied 20 NY3d 1063 [2013]). Here, the evidence adduced at the suppression hearing fully supports County Court's conclusion that defendant not only volunteered his consent to the search, but also facilitated the search by offering, and then subsequently engaging the backhoe, to exhume the dog's remains. "Such conduct signified . . . defendant's voluntary consent and willingness to cooperate with the police officers in their search" (People v Quagliata, 53 AD3d 670, 672 [2008] [citations omitted], lv denied 11 NY3d 834 [2008]; see People v McCray, 96 AD3d at 1481; People v Santiago, 41 AD3d 1172, 1173-1174 [2007], lv denied 9 NY3d 964 [2007]; People v Sinzheimer, 15 AD3d at 734; People v DePace, 127 AD2d 847, 848-849 [1987], lv denied 69 NY2d 879 [1987]). Accordingly, County Court properly denied suppression of the physical evidence.
Garry, P.J., McCarthy, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.