The People of the State of New York, Appellant,
against
Michael McCarthy, Respondent.




Nassau County District Attorney (Daniel Bresnahan and Amanda Manning of counsel), for appellant.
Barket Epstein & Kearon, LLP (Donna Aldea of counsel), for respondent.

Appeal from an order of the District Court of Nassau County, First District (Helen Voutsinas, J.), dated December 22, 2016. The order, after a hearing, granted the branch of defendant's motion seeking to suppress physical evidence, defendant's statements, and identification testimony, on the ground that defendant's arrest was without probable cause.




ORDERED that the order is reversed, on the law, and the matter is remitted to the District Court for a new determination of the branch of defendant's motion seeking to suppress physical evidence, defendant's statements, and identification testimony in accordance with this decision and order.
On July 31, 2015, the People charged defendant, in separate simplified traffic informations, with aggravated driving while intoxicated (Vehicle and Traffic Law § 1192 [2-a]) and driving while intoxicated (per se) (Vehicle and Traffic Law § 1192 [2]), after a blood alcohol test had produced a reading of .18 of one per centum by weight, and driving while intoxicated (common law) (Vehicle and Traffic Law § 1192 [3]), respectively. In addition, defendant was charged in an information with two counts of leaving the scene of an incident without reporting (Vehicle and Traffic Law § 600 [1], [2] [a]). Defendant moved to suppress physical evidence, his statements, and a showup identification. Following a combined Huntley/Mapp/Dunaway/Wade hearing, the District Court, after granting the People's request to bifurcate the Wade hearing (see People v Chipp, 75 NY2d 327 [1990]), granted the motion upon [*2]a finding that defendant had been arrested without probable cause, reaching no other issue.
At the hearing, a police officer (the investigating officer) testified that, when he had reported to the scene of a head-on collision between two vehicles which had resulted in personal injuries and property damage, the driver of the second vehicle stated to him that, moments after the accident, a white male had approached her asking if she was "okay," and he had then "walked away." The officer further testified that a witness to the accident had informed him that he had observed a white male with a stocky build standing by the driver's door of the first vehicle involved in the accident, who appeared to be removing items from the car. The accident-scene witness also informed the officer that the male had acknowledged to the witness that he was the operator of that vehicle, and that, shortly thereafter, the white male had "disappeared." Two other witnesses to the accident informed the investigating officer that they had observed a person of the same description running away from the accident scene in the direction of a train station. 
A second police officer (the arresting officer) testified he had been notified of the head-on collision and that, minutes later, the police had received a telephone report that a white male, aged about 30 (defendant was 29), had been seen running through the caller's backyard at a location about 500 feet from the accident, also in the direction of the train station. The police broadcast that information, along with the fact that a driver's license issued to Michael McCarthy had been recovered from the inside of the white male's vehicle, and that there was blood on a deflated air bag. Another police broadcast included the information that a taxi driver at the train station had reported that a male, who stated that he had been involved in an accident, had attempted to enter the cab. One of those reports also included the information that the homeowner or taxi driver had also reported that the male had a cut to his leg. The arresting officer reached the train station about two minutes after hearing the police broadcast concerning the taxi driver's report, and immediately observed defendant, a white male with a "large build" wearing shorts with a rip and with blood on his leg from a cut, walking across the train tracks and away from the officer's location. The officer approached defendant and asked him if his name was Michael McCarthy. Defendant refused to respond and, without slowing down, continued walking away. Perceiving the necessity of a confirmatory identification, the officer approached defendant, and, "right off the bat," he perceived indicia of intoxication, including defendant's unsteadiness on his feet, the odor of an alcoholic beverage, glassy and bloodshot eyes, and, subsequently, slightly slurred speech. The officer stopped defendant by placing a hand on his arm, and he asked defendant if he had been involved in an accident and whether he had been drinking. After initial disclaimers, defendant admitted to both, adding that he had consumed "four drinks." Concerned for his own safety in light of defendant's stockiness and his intoxication, and seeking to ensure defendant's presence for an identification procedure given defendant's suspected flight from the accident scene and his attempt to avoid contact by walking away from the officer's inquiry, the officer handcuffed defendant pending the identification procedure. 
A third police officer testified that he had driven the accident-scene witness past defendant's location, in a patrol car. The witness observed defendant, who was seated on a curb, and identified him as the person who had acknowledged driving one of the vehicles involved in the accident and who had withdrawn possessions from the vehicle before departing from the scene. Defendant was then arrested.
In an order dated December 22, 2016, the District Court found that, in light of the description, the spatial and temporal proximity of the arresting officer's initial encounter with defendant to the accident scene, the reports of a person matching defendant's description being present at the accident scene, fleeing through backyards in the direction of the train station, and admitting to a taxi driver, at the train station, that he had been involved in an accident, the People had established that there was reasonable suspicion to detain defendant for further investigation (see CPL 140.50 [1]; People v Martinez, 80 NY2d 444, 448 [1992]; People v Hollman, 79 NY2d 181, 185 [1992]). However, the District Court then determined that, under the circumstances, upon the application of handcuffs, defendant was subjected to a full-blown arrest without probable cause, requiring that all subsequently acquired physical evidence, statements, and identification testimony be suppressed.
Under the circumstances presented, we cannot agree that the application of handcuffs transformed defendant's detention into a formal arrest. The Court of Appeals has long rejected the notion "that the application of handcuffs will always be dispositive of whether the detention of a suspect on reasonable suspicion has been elevated into a full-blown arrest" (People v Allen, 73 NY2d 378, 380 [1989]; see e.g. People v Gray, 143 AD3d 909, 909 [2016]; People v Santiago, 41 AD3d 1172, 1174 [2007]; People v Galloway, 40 AD3d 240, 240 [2007]), and, while handcuffing represents an intensification of the degree of restraint imposed (see e.g. People v Robinson, 282 AD2d 75, 80 [2001]; People v Acevedo, 179 AD2d 465, 465 [1992]), it is permitted where necessary, for example, to ensure an individual's presence for a prompt showup identification (see e.g. People v Barnes, 4 AD3d 433, 433 [2004]), even where, unlike the present case, the individual is thereafter transported in a police vehicle to a showup scene (see e.g. People v Samuels, 113 AD3d 1117, 1118 [2014]). The determination to conduct a showup was proper given the close physical and temporal proximity to the commission of the offenses (People v Ortiz, 90 NY2d 533, 537 [1997]), as well as the reports of the suspect's appearance and behavior beginning at the accident scene and ending at the train station (see e.g. People v Johnson, 149 AD3d 780, 782 [2017]; People v Whittle, 102 AD3d 710, 710 [2013]; People v Palmer, 84 AD3d 1414 [2011]). The arresting officer, confronted with someone suspected of having committed an offense by virtue of flight from an accident scene, who had initially sought to avoid the officer's inquiry, who exhibited significant indicia of intoxication, and who was so stocky of build as to raise the officer's concerns that a physical altercation with defendant would endanger him, reasonably believed that the handcuffs were necessary "to effect [defendant's] nonarrest detention" in anticipation of the showup (People v Williams, 73 AD3d 1097, 1099 [2010]), and to ensure his safety (see e.g. People v Allen, 73 NY2d at 379, People v Wiggins, 126 AD3d 1369, 1370 [2015]; People v Gil, 21 AD3d 1120 [2005]).
By virtue of its erroneous finding that the police illegally arrested defendant prior to the showup, the District Court did not reach the remaining issues to be determined by the combined hearing. Accordingly, the order granting suppression on the ground that defendant was arrested without probable cause is reversed and the matter is remitted to the District Court for a new determination of defendant's suppression motion.
RUDERMAN, J.P., TOLBERT and GARGUILO, JJ., concur.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: May 09, 2019